**UNITED STATES v. DE VASTO et al.**
No. 268.

Circuit Court of Appeals, Second Circuit.
July 28, 1931.

ern district of New York for conspiracy to violate the National Prohibition Act (27 USCA). The indictment charges generally that the defendants conspired with each other and with divers other persons to manufacture, sell, transport, and distribute beer of prohibited alcoholic content and fit for beverage use. More specific allegations then set out that it was part of the conspiracy to cause the Columbia Company to be incorporated, have it take a lease of premises in the city of Hudson known as the Old Evans Brewery, obtain a federal permit to operate the leased premises as a plant for the manufacture of near beer, and under cover of such permit manufacture, sell, and distribute intoxicating beer; to keep false books and records purporting to show lawful operation under the permit; to submit false reports to the district prohibition administrator; to maintain places in which intoxicating beer would be unlawfully stored, and to operate trucks for the unlawful transportation of intoxicating beer from said brewery and storage places to various places of distribution and sale. The defendants included persons alleged to have organized and controlled the corporation, workers at the brewery, truck drivers and alleged distributors of the brewery output.

Of the persons indicted, five obtained a severance, one a directed verdict in his favor, eleven were acquitted by the jury, and nine defendants, including the corporation, were found guilty. The corporation and two of the convicted individuals have not appealed. The six appellants are Michael De Vasto, who allegedly instigated the formation of the corporation and directed its activities; George H. Burt, secretary-treasurer of the corporation and part owner of the premises leased to it; Nicholas Potenti, manager of the operations of the brewery; and Eugene Levy, Edwin Folz, and Joseph Coglianese, who allegedly were connected with the distribution of the beer.

The first three of the above-named appellants urge identical grounds for reversal. They rely upon alleged errors in the admission of evidence, the refusal of the trial court to grant a motion for a bill of particulars, and certain prejudicial comments made by the prosecuting attorney during his summation. The appellants Levy, Folz, and Coglianese, in addition to the grounds urged by the others, assert that the evidence, even if properly admitted, was insufficient to connect them with the conspiracy.

William Hayward and Sanford H. Cohen, both of New York City, for appellants George T. Burt and others.

John M. Cashin, of New York City, for appellants Eugene Levy and others.

George Z. Medalie, U. S. Atty., of New York City (James Hendrick Terry, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

Columbia County Cereal Beverage Company, Inc., a corporation, and twenty-five natural persons, were indicted in the South-

The record is very voluminous. No general statement of the proven facts need be attempted, but as the discussion proceeds reference to the evidence will be made so far as deemed necessary. In general we may say that, if all the evidence was properly submitted to the jury, we entertain no doubt whatever of the correctness of the verdict finding the appellants guilty.

Much of the evidence of guilt consisted of or was based upon samples of intoxicating beer and various books and documents obtained by search and seizure which the appellants strenuously insist was illegal. Various motions to suppress such evidence were made both before and during the trial, in none of which the corporation joined. A consideration of the appellants' contentions as to these motions necessitates a summarized statement of how such evidence was obtained.

In June, 1929, the prohibition officials became suspicious that the Columbia Company was violating its permit, and Special Agent Gay was detailed to investigate. He moved into a house adjoining the brewery and began observations. He saw a number of trucks enter and leave the premises and could hear kegs being loaded. Most of the activity took place at night. The gate at the entrance to the brewery would be opened by a gatekeeper upon a blinking signal of the headlights of approaching trucks. On July 15, Gay was joined by other agents, and from July 16 to August 22, a continuous watch was kept. During this period there was usual activity within the plant, but no shipments left the plant except two loads of 15 half barrels bearing the yellow labels required on near beer. However, the monthly reports of sales filed by the Columbia Company with the prohibition officials showed shipments of near beer on almost every day during July and August. Agent Caffey, who had taken part in the continuous watch between July 16 and August 22, saw these reports and knew of the discrepancy between them and his own observations. On October 1, 1929, Agents Gay and Caffey and two other agents came to Hudson in an automobile which they parked at some distance from the brewery at a spot where they could watch the activities in the premises. At about 7:30 p. m. a truck left the racking platform and drove into the street. The truck was one which had been observed at the brewery during the previous period of observation. The agents followed this truck in their automobile. They could see that it was loaded with barrels which were wet and the odor of beer was noticed. They displayed their official badge and ordered the truck driver to stop. The driver only increased his speed. Finally they forced the truck to the side of the road and thus brought it to a stop. It contained 65 half barrels which smelled of beer and did not bear near beer labels. Smith, the truck driver, who was intoxicated, the agents said, was placed under arrest, and the truck was driven back to the brewery by Agents Gay and Caffey. The gatekeeper partly opened the gate but then started to close it. Agent Gay jumped from the truck, forced open the gate, and put the gatekeeper under arrest. Agent Caffey then drove the truck into the brewery. He saw another truck backed up against the racking room platform and the defendant Sutton was rolling a keg onto it. Sutton started to run away, and obeyed the agents' order to stop only after Caffey had fired a pistol into the air. Sutton was then taken into custody. The truck at the platform was partly laden with 20 half barrels which were later found to contain beer of forbidden alcoholic content. About the time of Sutton's arrest the noise of the racking machine, which had previously been audible, was suddenly stopped, and the door leading from the racking room to the platform was closed. The agents entered the brewery from the boiler room and found several employees in the filter room and racking room endeavoring to empty the racking machine and to wash away traces of beer. These employees were arrested. Samples were taken from the machine and elsewhere and were found to be 4 per cent. beer. The agents also entered the offices of the Columbia Company which were in a small building separate from the brewery but within the premises as described in the application for the company's permit. The vault in the office was found locked. It was opened on October 3d and the contents inventoried and removed. On October 10th a locked safe in a room adjacent to the main office was opened and the contents inventoried and removed. In the vault and safe were found the corporate books and records, whose admission in evidence is especially denounced by the appellants. No search warrant was obtained for opening either. None of the appellants was upon the premises at the time of the raid.

The truck driver Smith moved before trial for suppression of all evidence obtained by the seizure of his truck. This motion was granted as to Smith, but the evidence was allowed, subject to connection, as against the other defendants. Whether the ruling in fa-

vor of Smith was correct is not before us. With respect to the appellants, however, it may be said that, even if the seizure of the truck was illegal, that was no violation of their rights; there being no disturbance either of their ownership or possession. In re Dooley, 48 F.(2d) 121 (C. C. A. 2), and authorities there cited. Hence the argument that the evidence thus obtained may not be used to support the government's contention that the agents had probable cause for entry into the brewery premises is without merit.

After the stopping of Smith's truck, if not before, the agents did have probable cause to believe that beer was being unlawfully shipped from the brewery on that night. While the contents of the barrels on the truck were not immediately analyzed, the barrels smelled like beer, they were not labeled, and the driver was intoxicated. Coupled with the prior information obtained from watching the brewery during July and August, and from the corporation's reports of sales for those months, this was ample justification for believing that a crime was being committed and for entering to arrest the criminals. But even if it were assumed that the entry was improper, that would be only a trespass upon the land leased to the corporation of which the lessee alone could object. Rouda v. United States, 10 F.(2d) 916 (C. C. A. 2); Coon v. United States, 36 F.(2d) 164 (C. C. A. 10). After having made the entry, the attempted flight of Sutton, and the other evidences of attempted concealment certainly gave the agents adequate ground to make arrests for crime committed in their presence. Marron v. United States, 275 U. S. 192, 198, 48 S. Ct. 74, 72 L. Ed. 231; Mattus v. United States, 11 F.(2d) 503 (C. C. A. 9). Hence no complaint can be made of the use in evidence of the samples of beer taken from the brewery.

A different question is presented with respect to the search, several days after the arrest, of the vault and safe in the office building. The appellants rely upon Go-Bart Importing Co. v. United States, 282 U. S. 344, 51 S. Ct. 153, 75 L. Ed. 374, as condemning the seizure of the books and papers thus obtained. But assuming that the documents were illegally obtained, are the appellants able to assert the illegality? None of the appellants was in actual physical possession of the premises or the property seized. They made, and could make, no claim of ownership of the seized documents in their motions for return of the papers and suppression of the evidence. The books were purchased by the corporation, kept by the bookkeeper it employed, and contained an account of its transactions. They were corporate records, and their character as such is not changed by the fact that an additional set of falsified records was kept for deception of prohibition officials. It is idle to contend that only the false books were corporate records and that those which truly recorded the corporate business were personal records of the individuals who controlled the corporation. Hence the appellants are forced to advance the proposition that, where corporate records are seized by an unlawful search of the corporate premises, they cannot be used in evidence either against officers or managers of the corporation. But it has been repeatedly held that the rights declared by the Fourth Amendment are personal and can only be asserted by him whose rights are violated. In re Dooley, supra, and cases there cited. And the rule has been applied to the unlawful seizure of a corporation's property, without any disposition on the part of the courts to disregard the corporate entity in favor of its officers, stockholders, and employees, as we are here asked to do. A. Guckenheimer & Bros. Co. v. United States, 3 F.(2d) 786 (C. C. A. 3), certiorari denied, 268 U. S. 688, 45 S. Ct. 509, 69 L. Ed. 1157; Newingham v. United States, 4 F.(2d) 490 (C. C. A. 3), certiorari denied, 268 U. S. 703, 45 S. Ct. 638, 69 L. Ed. 1166; Haywood v. United States, 268 F. 795 (C. C. A. 7); and see Schenck v. United States, 249 U. S. 47, 50, 39 S. Ct. 247, 63 L. Ed. 470; Bilodeau v. United States, 14 F.(2d) 582, 585 (C. C. A. 9). We do not read the Go-Bart Case as laying down a contrary doctrine. Hence we conclude that the corporate records were properly admitted as against the appellants.

Error is assigned to the District Court's refusal to grant a motion for a bill of particulars. While the general charge of conspiracy was very broad, subsequent allegations of the indictment set out a full and adequate outline of what the government expected to prove. It cannot be contended that the defendants were taken by surprise upon the trial. The motion for a bill of particulars is addressed to the trial court's discretion (Wong Tai v. United States, 273 U. S. 77, 82, 47 S. Ct. 300, 71 L. Ed. 545), and we find no abuse of discretion here. Cf. Horowitz v. United States, 262 F. 48, 49 (C. C. A. 2).

Objection is made that the witness Wood was allowed to testify to a conversation he had with an unknown person who instructed him how to keep the fictitious books of ac-

count. No error is apparent. Wood had testified that De Vasto and Potenti had sent him to meet the unknown person to get such instructions. The evidence was not offered to prove the truth of what the stranger said but to prove that through De Vasto and Potenti the witness was informed how to keep the books. The hearsay rule was not involved.

■ Objection is also made to certain testimony of the witness Nooney as to the market price of near beer. It will suffice to say we see no error in its admission. See Wigmore, Evid. (2d Ed.) §§ 716–720.

■ Witness Kohl, called by the government, testified that he was an attorney and had represented De Vasto for many years. He testified that he took title to the brewery property from the former owner, and then, over objection, was permitted to say that he did this at De Vasto's request. He also testified that he transferred a half interest in the property to defendant Burt and, again over objection on the ground of privilege, that the money received from Burt was paid over to De Vasto. The testimony was competent, both because the transactions to which Kohl testified were simple transfers of title to real estate rather than consultations for legal advice (5 Wigmore, Evid. [2d Ed.] §§ 2296, 2297), and because the transfers were steps in the criminal conspiracy. 5 Wigmore, Evid. (2d Ed.) § 2298; People v. Farmer, 194 N. Y. 251, 269, 87 N. E. 457; Fuston v. United States, 22 F.(2d) 66, 67 (C. C. A. 9). And see Kaufman v. United States, 212 F. 613, 618, Ann. Cas. 1916C, 466 (C. C. A. 2); Alexander v. United States, 138 U. S. 353, 358, 11 S. Ct. 350, 34 L. Ed. 954.

■ It is insisted that reversible error was committed in prejudicial comments made by the prosecutor in his summation to the jury. The comments arose out of the following situation: Witness Walsh had testified that De Vasto and Burt had told him of a meeting in the Hotel Roosevelt at which they had bribed a prohibition official in connection with securing the brewery permit. Counsel for the defendants had attacked this story in their summation, asserting that the government itself did not believe it. In replying to this charge, the prosecutor said: "There are only two people in this room who do know—the people who went there—Mr. De Vasto and Mr. Burt." Motions for a mistrial were made on the ground that this constituted prejudicial comment upon the failure of De Vasto and Burt to take the witness stand. Clearly it was an attempt to answer the argument of defense counsel, not a deliberate effort to call to the jury's attention the fact that these two defendants had not testified. By way of retaliation to an argument of the defense, statements by the prosecutor will often become proper which would otherwise be objectionable. Cf. Crumpton v. United States, 138 U. S. 361, 364, 11 S. Ct. 355, 34 L. Ed. 958; Nichamin v. United States, 263 F. 880, 881 (C. C. A. 6); Rice v. United States, 35 F. (2d) 689, 694 (C. C. A. 2). But even if the statement were held to go beyond this principle, the trial court's charge to the jury was explicit that no presumption or inference should be drawn from the failure of any defendant to testify. The error, if any, in the remarks of the prosecutor, was cured by this charge.

■ We pass now to the contention of appellants Levy, Folz, and Coglianese that the evidence was insufficient to connect them with the conspiracy. The allegations of the indictment with respect to these defendants charged them with taking part in the unlawful transportation and distribution of the brewery's output, and Folz was charged in addition with negotiations for hiring a storage "drop" for the beer at 22 Ferry street. Aside from the testimony of Walsh and Wood, that each of these defendants had been at the brewery on a few occasions, the testimony of Nooney that Folz had been at 22 Ferry street, and the testimony of Caffey that among the automobiles entering the brewery during the period of observation were two which were registered in the names of Folz and Coglianese, respectively, the corporation's ledger account of sales showed that these defendants were the largest purchasers of its product. From May to October, 1929, Levy had taken over 8,000 half barrels of "beverage," Folz, 3,500, and Coglianese, 1,500. The prices paid justify an inference it was not near beer. Another corporate book listed Coglianese for $250 on a page headed "Money invested since June 7."

It is insisted by these appellants that the proof showed merely that they were purchasers, and that purchasers of intoxicating liquor are not liable as conspirators with the sellers. Norris v. United States, 34 F.(2d) 839 (C. C. A. 3), reversed on other grounds, 281 U. S. 619, 50 S. Ct. 424, 74 L. Ed. 1076; Becher v. United States, 5 F.(2d) 45, 50 (C. C. A. 2); United States v. Heitler, 274 F. 401, 405 (D. C. E. D. Ill.). Assuming that a proper construction of the National Prohibition Act, which failed to make the purchase of liquor criminal, forbids holding that

a purchaser as such is a coconspirator with the seller, the facts in the present case do not include it within such rule. Here the purchases were not for personal consumption, but for resale. These appellants were steady purchasers from the beginning of the Columbia Company's operations. The jury could find that they had knowledge of the proved conspiracy to manufacture, transport, and sell, and that they actively assisted to further the ends of the conspiracy by acting as distributors of the brewery's output of undealcoholized beer. See Johnson v. United States, 5 F.(2d) 471, 475 (C. C. A. 4); Dickerson v. United States, 18 F.(2d) 887, 893 (C. C. A. 8); Rudner v. United States, 281 F. 516 (C. C. A. 6); Anstess v. United States, 22 F.(2d) 594 (C. C. A. 7); U. S. v. Engelsberg (C. C. A. 3) 51 F.(2d) 479, opinion June 30, 1931.

As to all appellants, the judgment is affirmed.