**POLLOCK v. UNITED STATES.**

No. 14126.

United States Court of Appeals
Fifth Circuit.

Feb. 27, 1953.

Rehearing Denied March 30, 1953.

282

1944 was barred by the statute of limitations of six years, 26 U.S.C.A. § 3748(a) (3). That sub-section provides in part, "Where a complaint is instituted before a commissioner of the United States within the period above limited, the time shall be extended until the discharge of the grand jury at its next session within the district." The indictment was returned more than six years after the income tax return for the year 1944 was filed with the collector. However, within the six year period, a complaint had been instituted before a United States Commissioner, a warrant issued thereon and the appellant arrested. The indictment was returned before the discharge of the grand jury at its next session within that district. It appears to us, therefore, that Count 1 was not barred by the statute of limitations.

Llewellyn A. Luce and Walter H. Maloney, Washington, D. C. (Warren Roberts Wilmington, Del., of counsel), for appellant.

John D. Hill, U. S. Atty., and L. Drew Redden, Asst. U. S. Atty., Birmingham, Ala. (J. Thomas King, Asst. U. S. Atty., Birmingham, Ala.), for appellee.

Before HUTCHESON, Chief Judge, and STRUM and RIVES, Circuit Judges.

RIVES, Circuit Judge.

The appellant was indicted and convicted for violating 26 U.S.C.A. § 145(b), willfully attempting to evade or defeat income taxes due by him and his wife for the calendar years 1944 and 1945 by filing false and fraudulent income tax returns. He was sentenced to pay a fine of $1,000 and to eighteen months imprisonment. We note the district judge's statement that in imposing that sentence he took into consideration the fact that the appellant would be eligible for consideration for parole after serving one-third of the time.

[1] Appellant contends that Count 1 of the indictment relating to the calendar year

If Count 1 were so barred a reversal would not be required, because the sentence was within the maximum punishment permitted under either count and the verdict under Count 2 would support the sentence imposed by the court.[1]

Previous to 1944, appellant and his wife had made their income tax returns on a calendar year basis. In August of 1943, the appellant purchased the Dothan Jewelry Company, and thereafter operated that company throughout the years 1944 and 1945. He did not include any of the income from that company in his 1943 tax return. Notwithstanding that company was owned solely by the appellant, he mistakenly informed his accountants that it was a partnership in which he owned a two-thirds interest and his son, R. E. Pollock, a one-third interest. The government at no time has sought to impute any fraudulent purpose to that mistake, but has treated it as having been made in good faith. Acting upon the erroneous assumption of a partnership, the books of the Dothan Jewelry Company were kept upon a fiscal year basis for fiscal years ending July 31, 1944 and July 31, 1945. The income tax returns of appellant and his wife purported to be for

1. United States v. Trenton Potteries, 273 U.S. 392, 402, 47 S.Ct. 377, 71 L.Ed. 700; Whitley v. United States, 5 Cir., 100 F.2d 504; Norwitt v. United States, 9 Cir., 195 F.2d 127, 135.

the calendar years 1944 and 1945 and were filed on March 15th of the succeeding year, but exhibits attached to the returns showed that as to the Dothan Jewelry Company, the net profit was calculated for a fiscal year ending July 31st. The resulting confusion and uncertainty has given rise to several of the appellant's contentions.

■ Appellant contends that the indictment covering the calendar years 1944 and 1945 is completely invalid as a matter of law because Section 41 of the Internal Revenue Code, 26 U.S.C.A. § 41, requires his net income to be computed upon the basis of his annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method regularly employed in keeping his books, citing several decisions in civil tax cases.[2] The contention is clearly without merit. As a pleading, each count of the indictment is "a plain, concise and definite written statement of the essential facts constituting the offense charged". Rule 7(c), Federal Rules of Criminal Procedure, 18 U.S.C.A.; 26 U.S.C.A. § 145(b).

There was no variance between the allegations and the proof. The returns were on calendar year forms and purported to be for the calendar year. The taxpayer did not have the approval of the Commissioner to change his accounting period from calendar year to fiscal year, 26 U.S.C.A. § 46. Apparently all items of income, except from the Dothan Jewelry Company, were calculated for the calendar year.

■ The special agent, after examining the taxpayer's books and accounts, the several pertinent bank accounts, and after taking sworn statements from the appellant and his wife, undertook to recompute the net income strictly for the calendar years 1944 and 1945, not including any income for the preceding year but including all of the income for the calendar year. He testified that, on a strictly calendar year basis, he found an aggregate net income for 1944 of $20,518.55, not much more than that

shown by the return, $19,503.49, but that for 1945, on a strictly calendar year basis, the total corrected net income was $48,709.91 as against $15,871.83 shown by the return. The confusion and uncertainty occasioned by appellant's own mistake in keeping the books of the Dothan Jewelry Company on a fiscal year basis, while his and his wife's joint return was made on a calendar year basis, was sufficiently explained and clarified by the evidence so that the jury could arrive at the true facts.

Several of the written charges requested by the appellant and refused by the court were rooted in the same error, and sought to have the jury instructed to acquit the appellant if the jury found that the United States had included in his taxable income for the calendar year monies paid during the preceding year. The United States had made various computations, some following the mixed calendar year—fiscal year system originated by the taxpayer. Those computations and that confusion were no cause for requiring the jury to acquit the appellant if they believed from the evidence beyond a reasonable doubt that he was guilty as charged. We find no reversible error in the refusal of any of the requested charges, and, other than those requested, there was no objection to the court's oral charge.

The books and records of the Dothan Jewelry Company for the period involved accounted for monies deposited in the business bank account, but did not reveal that any income of the business was diverted into any of the personal bank accounts of the appellant or his wife. That fact was discovered by the special agent and, upon examination before the trial, was admitted by the appellant. According to the testimony of two bookkeepers, who had been employed by the appellant during the period in question, the source of information used to compute sales receipts was a cash register tape. Any sales omitted from the cash register were not reflected on the books and records of the Dothan Jewelry

2. W. E. Easterwood, Jr. v. Commissioner, 28 B.T.A. 1284, acquiesced in Cumulative Bulletin 1939–2, page 11; Duriron Company v. Commissioner, 18 B.T.A. 554; Brooklyn City Railroad Company v. Commissioner, 27 B.T.A. 77; Great West Printing Company v. Commissioner, 22 B.T.A. 346, affirmed 8 Cir., 60 F.2d 749; Charles E. Hires Co. v. Commissioner, 26 B.T.A. 1351.

Company. Four witnesses who were sales people employed by the appellant during this period testified that their instructions were that the proceeds of large sales were not to be run through the cash register, but were to be given to appellant or his wife. A number of customers who had made large purchases produced their receipts or cancelled checks, and the special agent testified that these were not reflected on the Company's books. If this kind of evidence stood alone, however, it would not be sufficient for conviction, because the appellant and his wife did instruct their accountants to add to the amount of sales as shown by the books for the year 1944, $2,500, and for the year 1945, $4,000. These figures were not supported by any record and apparently were added either arbitrarily or from memory. The amounts did, however, exceed the sums testified to by large customers who were produced as witnesses, and the employee witnesses were not able to give any definite figures.

The government was finally forced to the net worth and gross expenditures method in its attempt to prove the appellant guilty of an attempt to defeat or evade his income tax. Using that method to supplement the books and accounts the special agent could be certain of only about $1,000 by which the net income for 1944 was under-reported, while the appellant's accountant, introduced as a government witness, testified that by computing income on the net worth basis for the calendar year 1944, the appellant actually overreported his net income by the sum of $8,565.01.

For the year 1945, the results are more decisive. Both the special agent and appellant's accountant by the net worth method calculated substantially more net income than the amount shown on the return, $15,871.83. The special agent computed a total corrected net income of $48,709.91 for the calendar year 1945, while the final figure of appellant's accountant as a government witness was $57,042.14.

The appellant did not testify in his own behalf, and, introducing some documentary exhibits, rested his case at the close of the government's evidence. The court properly instructed the jury that the appellant's failure to testify in his own behalf created no presumption against him. 18 U.S.C.A. § 3481.

The appellant relies upon the cases of Bryan v. United States, 5 Cir., 175 F.2d 223, and United States v. Fenwick, 7 Cir., 177 F.2d 488, in insisting that the evidence was insufficient to make out a *prima facie* case against him, and that the case should not have been submitted to the jury. Appellant's strongest attack regarding the sufficiency of the evidence is directed at the year 1944. There was a general verdict of guilty. The sentence being within the maximum limit of punishment that could have been imposed under either count, the judgment and conviction would be due to be affirmed if there is no other error and if the evidence is sufficient to support a conviction on either count of the indictment.[3]

■■ Evidence under the net worth—expenditures method of establishing net income, being circumstantial, must exclude in the minds of the jury every reasonable hypothesis other than the guilt of the defendant. In Bryan v. United States, supra, there were no admissions by the defendant and the court found that the computation of net worth at the beginning of the questioned period could not reasonably be accepted as accurate. In the present case, the government agents made a rather thorough independent investigation; and then, by repeated examination of the taxpayer under oath, and also of his wife, after due warning of their constitutional rights, traced their financial history back for many years, established their net worth at the beginning of the questioned period and excluded every source of increase of net worth other than taxable income. This written testimony was all offered in evidence either by the government or by the defendant, or by both. It sufficed, we think, to furnish to the jury evidence, which, if believed, would exclude every possibility that the net worth—expenditure evidence reflected anything other than actual receipt of taxable income during the questioned period. Brodella v. United States, 6 Cir., 184 F.2d 823; Bell

3. See cases cited in footnote (1), supra.

v. United States, 4 Cir., 185 F.2d 302; Gariepy v. United States, 6 Cir., 189 F.2d 459; United States v. Yeoman-Henderson, Inc., 7 Cir., 193 F.2d 867.[4]

A considerable part of the increase in net worth was disclosed by the testimony of Milton Weiss, a lawyer who had acted as the appellant's attorney during the period in question. Over the appellant's objection testimony was drawn from him that appellant's wife had deposited with him $19,925.08 in 1945, and that appellant had deposited with him in 1945 an additional $41,500. All of this $41,500 was in currency except two nine hundred dollar checks. Most of this money was used by Mr. Weiss to apply on the purchase price of real estate bought for the appellant and his wife. $10,000 was returned to the appellant sometime after the year 1945. Copies of receipts, deposit slips and records in the attorney's possession substantiating these large deposits were introduced in evidence also over the appellant's objection. The appellant insists that this evidence was privileged and inadmissible because Mr. Weiss was his attorney.

█ Congress has not given the states the power of prescribing the rules of evidence in trials for offenses against the United States. In criminal cases in the federal courts, the admissibility of evidence and the competency and the privileges of witnesses are governed, except when an act of Congress or the Federal Rules of Criminal Procedure otherwise provide, by the principles of the common law as interpreted by the courts of the United States in the light of reason and experience. Rule 26, Federal Rules of Criminal Procedure; On Lee v. United States, 343 U.S. 747, 754, 755, 72 S.Ct. 967; McNabb v. United States, 318 U.S. 332, 341, 63 S.Ct. 608, 87 L.Ed. 819; Olmstead v. United States, 277 U.S. 438, 468, 469, 48 S.Ct. 564, 72 L.Ed. 944.

4. The district judge fully and ably instructed the jury as follows:

"Under the authority of this statute, Section 41 of the Internal Revenue Code, 26 U.S.C.A. § 41, where the taxpayer's records are found to be inaccurate or not available, there are various methods to be used. Among them are, one, an analysis of the taxpayer's bank deposits; two, proof of expenditures; and three, proof of increase in net worth. A combination of these three has been employed by the Government in this case.

"In using this method, it is incumbent upon the Government to satisfy the jury beyond a reasonable doubt that expenditures made by the taxpayer for the year in question were from taxable, earned income for that year, and not from a surplus which the taxpayer had built up in previous years. This, of course, applies to the increased net worth method.

"It is incumbent upon the Government to satisfy the jury beyond a reasonable doubt that the increased net worth for the year in question was built up out of earned, taxable income for that particular year, and did not come from gifts or nontaxable income, nor long-term nontaxable gains.

"The Government must also establish beyond a reasonable doubt that the increased net worth for the years in question did not come out of amounts earned in prior nonprosecution years.

"In a net worth case, attention is focused to the differences between the tax-payer's assets and liabilities as of the beginning and as of the end of a given prosecution year. The increase, if any, in net worth is presumed to be net income if certain conditions obtain. They are, one, that there is evidence of a possible source or sources of income to account for the expenditures or the increased net worth; and, two, that there is a fixed starting point at which the taxpayer's financial condition can be affirmatively established.

"A starting point net worth must be satisfactorily established in order to foreclose the hypothesis that the expenditures or net worth increases were derived from prior accumulated funds, which of course could not represent income in the subsequent prosecution years.

"As I have stated, this case is not based upon direct evidence, but indirect or circumstantial evidence, or part direct and part circumstantial.

"I charge you, gentlemen of the jury, that to warrant a conviction upon circumstantial evidence alone, the facts must not only be consistent with the guilt of the Defendant, but they must also be inconsistent with any reasonable theory of his innocence."

The appellant made no objection to this part of the court's charge and requested no further written instructions on the subject. See Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A.

Mr. Weiss' testimony and the documentary evidence substantiating it was clearly admissible for several reasons. The privilege accorded to communications between attorney and client does not apply except where the attorney acts in his professional capacity. Where the attorney is a mere scrivener or the transaction involves a simple transfer of title to real estate and there is no consultation for legal advice, it has been held that communications to an attorney are not privileged. United States v. De Vasto, 2 Cir., 52 F.2d 26, 78 A.L.R. 336; 58 Am.Jur., Witnesses, Sec. 481; Chapman v. Peebles, 84 Ala. 283, 4 So. 273, 274. The testimony required of Mr. Weiss included no confidential communication, but simply the acts of depositing money. There is no magic in a law license that would prevent a lawyer from being required to testify to acts of this kind, just as the same type of testimony might be required of a banker or of a real estate broker. More important, where the party is being tried for a crime in furtherance of which the communication to the attorney was made and evidence has been introduced giving color to the charge, it is well settled that the communication is no longer privileged. Clark v. United States, 289 U.S. 1, 15, 53 S. Ct. 465, 77 L.Ed. 993; Alexander v. United States, 138 U.S. 353, 360, 11 S.Ct. 350, 34 L.Ed. 954; Kaufman v. United States, 2 Cir., 212 F. 613, 618; United States v. De Vasto, supra; 58 Am.Jur., Witnesses, Sec. 516.

We find no reversible error in the record and the judgment is therefore

Affirmed.