George **GILMORE** and Perry O. Carlisle, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 15319.

United States Court of Appeals Fifth Circuit.

Dec. 23, 1955.

Rehearing Denied Feb. 15, 1956.

**122**

Joseph J. Rey, El Paso, Tex., for appellants.

Wm. Monroe Kerr, Asst. U. S. Atty., Midland, Tex., Holvey Williams, Asst. U. S. Atty., El Paso, Tex., Russell B. Wine, U. S. Atty., San Antonio, Tex., for appellee.

Before HOLMES, RIVES and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

The appellants, George Gilmore and Perry Owens Carlisle, were convicted on all three counts of an indictment charging them with violating 26 U.S.C.A. (1939) § 2593(a), 26 U.S.C.A. (I.R.C. 1954) § 4744(a), by acquiring marijuana without paying the transfer tax thereon, transferring marijuana to a federal narcotics agent not in pursuance of a written order on a form furnished by the Secretary of the Treasury in violation of 26 U.S.C.A. (1939) § 2591(a), 26 U.S. C.A. (I.R.C.1954) § 4742(a); and with conspiring to commit the latter violation in violation of 18 U.S.C.A. § 371. The question presented by the appeal of George Gilmore is whether the District Court erred in denying his motion for acquittal on the ground of entrapment; and the issue presented by appellant Carlisle's appeal is whether there was sufficient evidence to sustain the verdict as to him.

Federal Narcotics Agent White, through a telephone call to Gilmore by Ruth Hall, a marijuana dealer in New York, made contact with George Gilmore, in San Antonio, Texas, following which White went to Gilmore's house and approached him concerning the purchase of marijuana. Gilmore at first indicated that he did not know what White was talking about, whereupon White began preparations to leave Gilmore's house. Promptly Gilmore changed his attitude and took White in his car and they established a close relationship which continued through several days. White and Gilmore went to El Paso and, after a number of unsuccessful efforts by Gilmore, he finally arranged to obtain marijuana for White. Gilmore admitted his participation in the transfer and the profit accruing to him, but advanced entrapment as a defense, claiming that the evidence showed that the Government had created a crime which was not the product of an intention on his part. It is claimed that the Government's evidence was insufficient to rebut the defense of entrapment.

We think this argument is invalid and that there was credible evidence showing that the Government agents had reasonable grounds for believing that Gilmore was in the business of supplying narcotics and had done so on previous occasions. Three Government agents testified that information had come to them that such was the case, and one witness testified that she had arranged, by long distance telephone calls from New York, to make purchases from Gilmore, and that there had been six or more transactions with him. Gilmore took the stand and denied all of this testimony but a clear-cut issue was presented for jury decision. Gilmore presented a requested charge on the question of entrapment, and the trial court adopted that request in all of its essential aspects and read most of it as a part of the oral charge. The charge on this point was clear and explicit and was quite favorable to the

appellant and no exception was taken to the charge as given. We find, therefore, that there was adequate evidence to go to the jury on the question of entrapment, and that the law was carefully tracked by the Court below[1] and that the evidence supported the verdict rendered by the jury.

The evidence against appellant Perry Owens Carlisle was circumstantial in nature but was, in our opinion, sufficient to warrant the jury in finding the defendant guilty. The testimony of Agent White was to the effect that Gilmore had made a number of efforts to obtain the desired twenty-five pounds of marijuana and had about despaired of being able to do so, even going so far as to return the money which White had advanced to him for the purpose. At that juncture, White and Gilmore met defendant Carlisle, an old gambling pal of Gilmore, and those two had a conversation which White did not hear. Immediately following that conversation, however, Gilmore advised White that arrangements had been made for the purchase of the marijuana, which arrangements would be completed in a few hours so that White could arrange to leave by plane before nightfall. White advanced Gilmore $230.00 at his request, and Gilmore left the residence where White was staying and came back with the report that a total of $1,000.00 would have to be advanced. White gave him that amount of money, and Gilmore reported back at approximately 2:00 P. M. that everything was all right and that the deal would be concluded in a brief time.

It was arranged that White would leave his empty suitcase in the back room of the residence and this was done, and White and Gilmore went back into the front room of the house. Shortly thereafter White saw appellant Carlisle drive up in a Pontiac Sedan and turn into the alley-way and stop at the rear of the house, at which juncture Gilmore winked at him. Thereupon White and Gilmore went into the back room and Gilmore stated that everything was ready and White went back into the front room. Carlisle entered through the back room and came alone into the front room where White was and stated, "I hope he gets this stuff out of my car. I am in a hurry." (In the vernacular of the trade marijuana is referred to as "the stuff".) White asked Carlisle what stuff he referred to and Carlisle replied, "Man, I just brought the stuff. I got to get back to work."

Gilmore then came into the front room from the back room and said in Carlisle's presence, "Everything is ready. It is in the bag and everything." White then asked if he could make his plane reservations to go back to New York City and, upon receiving an affirmative reply, he went, in the presence of Gilmore and Carlisle, to the telephone and made reservations to catch the 3:25 plane. Defendant Carlisle did not take the stand, but defendant Gilmore did testify, stating that he had arranged to get the marijuana through a Mexican named "Dusty". And he testified that the marijuana was brought into the back room by a "Spanish fellow". No explanation was offered of why Carlisle showed up at the house at the very moment the marijuana appeared in White's suitcase, and Gilmore testified that Carlisle came in a taxicab and not in a Pontiac car. White did not see any person come to the back of the house except Appellant, Carlisle. Gilmore was contradicted in most of the material testimony by Agent White and also by Ruth Hall, who took the stand to testify in connection with Gilmore's entrapment plea.

Agent White was subjected to strenuous cross-examination by each of the attorneys for the defendants and stood up well and his version of what happened was much more reasonable than that given by Gilmore.[2] The jury had a right to accept White's version and to reject Gil-

1. Sorrels v. United States, 1932, 287 U. S. 435, 451, 53 S.Ct. 210, 77 L.Ed. 413; Hamilton v. United States, 5 Cir., 1955, 221 F.2d 611; Demos v. United States, 5 Cir., 1953, 205 F.2d 596.

2. For instance, it was contrary to human experience that Gilmore would accept without examination from a total stranger a package said to contain marijuana and would be instrumental in turning

**124**

more's, and there was sufficient evidence to go to the jury and to sustain its verdict of guilty against Carlisle on all three counts.

■ The proof against Carlisle on the conspiracy count was not strong, but was sufficient to sustain the jury's verdict. Moreover, the defendant was sentenced to a term of five years imprisonment on each count, the sentences to run concurrently. Each sentence was within the maximum punishment fixed by statute for the offenses respectively charged,[3] and they must be upheld if we are able to sustain the verdict and judgment on any one of the counts.[4]

Finding no error in the decision and judgment of the Court below, it is hereby

Affirmed.

over to him the large sum of money with no more assurance that he was getting what had been bargained for.

3. 26 U.S.C.A. § 2596 (1939), 26 U.S.C.A. (I.R.C.1954) § 7237(a), and 18 U.S.C.A. § 371.

4. Abrams v. United States, 1919, 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173; Pollock v. United States, 5 Cir., 1953, 202 F.2d 281.