165 F.Supp. 328 (1958)
UNITED STATES of America, Plaintiff,
v.
George H. FLORIDA, Defendant.
No. 1706.
United States District Court E. D. Arkansas, Jonesboro Division.
August 18, 1958.
James W. Gallman, Asst. U. S. Atty., Little Rock, Ark., for plaintiff.
E. J. Ball, Fayetteville, Ark., Catlett & Henderson, Little Rock, Ark., for defendant.
JOHN E. MILLER, District Judge.
On May 21, 1958, the defendant filed his motion to dismiss warrant, and in support of the motion served and filed his memorandum brief. On June 27, 1958, the government served and filed its memorandum brief in opposition to the motion. In addition to the briefs of the respective parties, the Court has *329 heard oral argument and has considered the record, and the motion is now ready for disposition.
The material facts necessary for consideration are not in dispute and may be summarized as follows:
On March 13, 1958, Eugene D. Brown, Special Agent, Internal Revenue Service, filed before a United States Commissioner for the Eastern District of Arkansas a complaint for violation of Section 145 (b) of the Internal Revenue Code, 26 U.S.C. § 145(b). The complaint charges:
"That on or about the 18th day of March, 1952, at Little Rock, in the Eastern District of Arkansas, George H. Florida, also known as G. H. Florida, did willfully and knowingly attempt to evade and defeat a large part of the income tax due and owing by him and his wife to the United States of America for the calendar year 1951 by filing and causing to be filed with the Collector of Internal Revenue for the District of Arkansas at Little Rock, Arkansas, a false and fraudulent joint income tax return on behalf of himself and his wife, wherein it was stated that their joint net income for said calendar year was the sum of $10,348.99 and that the amount of tax due and owing thereon was $1,566.18, whereas, as he then and there well knew, their joint net income for the calendar year 1951 was the sum of $44,455.74, upon which said net income there was owing to the United States of America an income tax of $15,621.78."
On the same date the United States Commissioner issued a warrant for the arrest of the defendant, and upon the defendant's arrest he was taken before Carson Boothe, United States Commissioner for the Eastern District of Arkansas, at Jonesboro, Arkansas, where defendant immediately posted bond.
The defendant did not waive preliminary examination but requested a hearing, and on April 14, 1958, such hearing was held by said United States Commissioner at Jonesboro, Arkansas. At the conclusion of the hearing the Commissioner held the defendant to await the action of the United States Grand Jury for the Eastern District of Arkansas, and stated:
"It seems to me according to what has been testified to here today there was enough systematic effort on the part of Mr. George Florida to accept the benefits from these organizations which he was associated with as a partner or a stockholder and justify the Commissioner in holding that there was probable cause for his detention. Therefore, it is my finding that probably the crime has been committed as charged in the complaint against Mr. Florida."
The grounds set forth in the motion of defendant are:
"1. There was no legally competent evidence before the United States Commissioner at the preliminary hearing to sustain a finding of probable cause of the violation of Section 145(b) of the Internal Revenue Code (26 U.S.C. § 145(b)).
"2. The testimony before the United States Commissioner at the preliminary hearing, if believed in toto, was insufficient in law to sustain a finding of probable cause of the commission of the offense charged.
"3. That the holding of the defendant to answer in the District Court, after a preliminary hearing before the United States Commissioner, upon testimony which was insufficient in law to sustain a finding of probable cause of the commission of the offense charged, constitutes a deprivation of liberty and property without due process of law in violation of the Fifth Amendment to the Constitution of the United States."
The only witness who testified at the preliminary hearing was Mr. Brown, the complainant, who stated that during the calendar year 1951 checks in the total *330 amount of $52,628.34 were issued and paid by the partnership of A. J. and G. H. (George H.) Florida for the benefit of George H. Florida, all of which were charged to the personal account of George H. Florida on the books of such partnership; that during such year a total of $11,682.02 was paid to various persons for the benefit of George H. Florida by corporations in which A. J. and G. H. (George H.) Florida owned more than 50 per cent of the stock, and that such payments were deducted by the corporations as items of expense; that he did not find that George H. Florida had destroyed any records, made any entries on any of the records or done anything whatsoever with the records; that there were no unreported or hidden bank accounts maintained by the defendant; that there was no duplicate set of books and that the defendant did not receive any checks or money from any sources that were not reflected on the books of the various companies which issued the checks.
Mr. Brown further testified that the defendant had an additional income of $34,106.75 which the income tax return for the calendar year 1951 did not reflect; that the gross income of the defendant for the calendar year 1951, in addition to the amount of $10,348.99 reflected in his income tax return, consisted of withdrawals by defendant from the partnership in which he held a 50 per cent interest and payments of $11,682.02 made for his benefit by certain corporations in which he held a stock interest. Thus, the total gross income, according to the testimony of the Special Agent, was $74,659.35, but the defendant was entitled to additional credits in the sum of $30,203.61 not claimed by him in his return, which reduced the total gross income to $44,455.74.
The above mentioned sum of $11,682.02 was paid by various Florida controlled corporations in numerous items to third persons to whom defendant was obligated for purchases. Such expenditures were charged to business expenses by such corporations or charged to depreciation accounts, but were actually for the benefit of the defendant. The expenditures consisted of architect's fees, material bills, furniture purchases, electric light bills, interior decorating expenses and labor pertaining to the personal residence of the defendant. Also, some bills for clothing and jewelry were paid by the various corporations for the benefit of defendant. At the end of the calendar year the corporations dropped the drawing account and did not carry it forward in any manner.
It will be noted that the offense charged to have been committed by defendant occurred on March 18, 1952, and prosecution would have been barred on March 19, 1958, under the provisions of 26 U.S.C. § 3748(a) (2). Thus, the complaint was filed and warrant issued six days prior to the expiration of six years from the date the alleged offense was committed.[1]
*331 In United States v. Zerbst, D.C. E.D.S.C., 111 F.Supp. 807, 808, the defendant had moved that the Commissioner's warrant against him be dismissed on practically the same grounds alleged by defendant in the instant case. The Court, in considering the motion, stated the questions as follows:
"(1) Does the District Court have the authority to review the action of the United States Commissioner in finding that there was probable cause for holding the defendant for the grand jury?
"(2) Was there sufficient evidence before the commissioner to warrant his finding that there was probable cause to believe that the defendant violated the provisions of Section 2913, Title 26, of the Internal Revenue Code?"
The Court held that it did have "the authority to review the action of the United States Commissioner in finding that there was probable cause in holding the defendant for the grand jury. The United States Commissioner is a ministerial or, at best, only a quasi judicial officer and his acts, therefore, are subject to review by the District Court." The ruling of the Court was based upon the opinion of Judge Learned Hand in United States v. Casino, D.C., 286 F. 976, 979, and cases therein cited, and also on the case of In re No. 191 Front Street, Borough of Manhattan, City of New York (Kirvin v. United States), 2 Cir., 5 F.2d 282, 286, and cases therein cited.
At page 810 of 111 F.Supp., the Court, in further discussing the jurisdiction to review the action of the United States Commissioner said:
"The United States Commissioner, being only a ministerial or quasi judicial officer, is always under the supervision and direction of the District Court. His findings may be reviewed by the District Court at any time. I would refuse, however, to review the findings of the commissioner in any case except one such as this. In this case, the defendant is a county police officer of Charleston County. As soon as he was arrested under the warrant he was properly suspended. It is not known when his case will be tried, and it seems to me that it would be improper for the District Court to refuse to take jurisdiction under the existing circumstances. I want to make it perfectly plain, however, to the members of the Bar of the Eastern District of South Carolina that there are very few cases decided by the United States Commissioner which this court will review. The circumstances must be extraordinary and unusual to justify the court's reviewing the case before it has been submitted to the grand jury. I think there are sufficiently strong circumstances in this case, however, to justify my assuming jurisdiction and reviewing the action of the commissioner."
The defendant contends that there was total lack of evidence presented to the Commissioner upon which a finding of probable cause could be made and that this case is unusual and extraordinary in that the only witness who testified admitted that there was a complete absence on the part of the defendant of the intent required by the statute upon which the complaint was based. There is no contention on the part of the defendant that the complaint fails to charge an offense. An examination of the complaint upon which the warrant of arrest was issued in connection with 26 U.S.C. § 145(b) discloses that the defendant was charged with willfully attempting to evade or defeat the tax by filing and causing to be filed with the Collector of Internal Revenue of the District of Arkansas, a false and fraudulent joint income tax return on behalf of himself and his wife. The defendant contends that the withdrawals from the partnership of A. J. and G. H. (George H.) Florida amounting to $52,628.34 cannot be considered as income under the proof submitted by the government at the preliminary hearing, and substantially *332 the same contention is made with reference to the payment by Florida controlled corporations of the sum of $11,682.02 for the use and benefit of the defendant, and further that the testimony did not disclose that any tax was due the United States for the calendar year 1951 by defendant. He states that "no principle of accounting is more elementary or firmly settled than that withdrawals of a partner from a partnership of which he is a member are not necessarily income." He quotes from Gleckman v. United States, 8 Cir., 80 F.2d 394, at page 399, as follows:
"Undoubtedly, the burden was upon the government to prove that an income tax was due from Mr. Gleckman for the years in question over and above the amount returned he could not be guilty of attempting to evade or defeat a tax unless some tax was due. O'Brien v. United States, 7 Cir., 51 F.2d 193. It may be conceded also that the bare fact, standing alone, that a man has deposited a sum of money in a bank would not prove that he owed income tax on the amount; nor would the bare fact that he received and cashed a check for a large amount, in and of itself, suffice to establish that income tax was due on account of it."
In the next paragraph of the opinion, on the same page, the Court said:
"On the other hand, if it be shown that a man has a business or calling of a lucrative nature and is constantly, day by day and month by month, receiving moneys and depositing them to his account and checking against them for his own uses, there is most potent testimony that he has income, and, if the amount exceeds exemptions and deductions, that the income is taxable. United States v. Miro [2 Cir.], 60 F. 2d 58; Oliver v. United States [7 Cir.], 54 F.2d 48, certiorari denied, 285 U.S. 543, 52 S.Ct. 393, 76 L.Ed. 935; Guzik v. United States [7 Cir.], 54 F.2d 618, certiorari denied, 285 U.S. 545, 52 S.Ct. 395, 76 L.Ed. 937; Capone v. United States [7 Cir.], 51 F.2d 609, 619, 76 A.L.R. 1534; Orzechowski v. United States [3 Cir.], 37 F.2d 713. See, also, Chadick v. United States [5 Cir.], 77 F.2d 961; Paschen v. United States [7 Cir.], 70 F.2d 491. We think there was in this case substantial circumstantial evidence that Mr. Gleckman did have a business outside of that described in his return and that at least some of his deposits were derived from it."
In his return for the calendar year 1951 the defendant did not take into consideration the amount of money that he received from the partnership nor the amount of money that was paid for his use and benefit to other persons by the Florida corporations. The circumstances surrounding these payments were, in my opinion, sufficient to justify the Commissioner in believing that a tax was due on these sums.
The defendant's chief contention is that the mere failure to return income and pay tax on it is insufficient to constitute a violation of 26 U.S.C. § 145(b), and relies principally upon the cases of Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418; Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; and Blackwell v. United States, 8 Cir., 244 F.2d 423. He quotes from page 139 of 348 U.S., at page 137 of 75 S.Ct. (Holland case) as follows:
"A final element necessary for conviction is willfulness. The petitioners contend that willfulness `involves a specific intent which must be proven by independent evidence and which cannot be inferred from the mere understatement of income.' This is a fair statement of the rule."
However, the Court in the next sentence said:
"Here, however, there was evidence of a consistent pattern of underreporting large amounts of income, and of the failure on petitioners' part to include all of their income *333 in their books and records. Since, on proper submission the jury could have found that these acts supported an inference of willfulness, their verdict must stand. Spies v. United States, supra."
In Blackwell v. United States, supra, at page 429 of 244 F.2d, the Court said:
"Defendant next urges that there is no proof of willfulness. `Willfulness "involves a specific intent which must be proven by independent evidence and which cannot be inferred from the mere understatement of income."' Holland v. United States, supra, 348 U.S. at page 139, 75 S.Ct. at page 137, 99 L.Ed. 150. The test of willfulness is quite fully discussed in Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418. Willfulness involves a state of mind. Direct proof of willfulness is seldom available. A consistent pattern of underreporting large amounts of income or overclaiming deductions and not recording such items on the taxpayer's records is evidence from which willfulness may be inferred. Holland v. United States, supra; Zacher v. United States, 8 Cir., 227 F.2d 219, 224; Canton v. United States, 8 Cir., 226 F.2d 313, 321."
The mere fact that the defendant employed none of the methods enumerated by the Supreme Court in Spies v. United States, supra, does not establish a lack of willfulness on his part. The case of Cave v. United States, 8 Cir., 159 F.2d 464, at page 466, was a case where the defendant had been indicted on four counts charging attempts to defeat and evade federal income taxes for certain years in violation of 26 U.S.C.A. § 145(b), and in that case the Court said:
"It is apparent that the Spies case does not support appellant's theory. The indictment in this case after the withdrawal of paragraph (2) of each count from the consideration of the jury did not attempt to charge a felony under § 145(b) by failure to file a return or pay a tax or by the omission or commission of any other dereliction defined as a misdemeanor in § 145(a). It charged an attempt to defeat and evade the tax by the positive act of willfully filing a false and fraudulent returnnot a mere failure to file any return. The indictment charged that for the year 1943 appellant filed a return showing an income of $8,455 and a tax due of $1,933.58, whereas he received an income in that year of $55,256.60 on which a tax in the amount of $30,843.69 should have been paid; and for the year 1944 he disclosed an income of only $788.04 and a tax of $8.64, whereas his income was $69,959.62 on which a tax in the sum of $43,392.22 should have been paid.
"The distinction between the offenses defined in § 145(a) and § 145 (b) is too clear to permit confusion. Section 145(a) denounces as a misdemeanor (1) willful failure to pay a tax; (2) willful failure to make a return; (3) willful failure to keep records; or (4) willful failure to supply information. Section 145(b), on the other hand, denounces as a felony a willful attempt `in any manner' to evade or defeat any tax. As said by the Supreme Court in the Spies case, supra, `Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation.'" See, also, Gaunt v. United States, 1 Cir., 184 F.2d 284.
In Myres v. United States, 8 Cir., 174 F.2d 329, the Court, beginning on page 334, said:
"The first contention of the defendant is that he was entitled to a directed verdict of acquittal; that the decision of the Supreme Court in Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418, precluded his being convicted under § 145(b) of the Internal Revenue Code. We cannot agree. A similar contention was rejected by this Court in Cave v. *334 United States, 8 Cir., 159 F.2d 464, certiorari denied 331 U.S. 847, 67 S.Ct. 1732, 91 L.Ed. 1856. Compare, Rick v. United States, 82 U.S.App. D.C. 101, 161 F.2d 897. In Cave v. United States, supra, this Court said, at page 467 of 159 F.2d: `* * The crime denounced by § 145(b) of willfully attempting to defeat or evade the tax is complete when the taxpayer willfully and knowingly files a false and fraudulent return with intent to defeat or evade any part of the tax due the United States. Guzik v. United States, 7 Cir., 54 F.2d 618, 619, certiorari denied 285 U.S. 545, 52 S.Ct. 395, 76 L.Ed. 937; Bowles v. United States, 4 Cir., 73 F.2d 772, 774.'
"In the instant case the defendant's return for each of the years in suit was false. The following inferences, we think, reasonably can be drawn from the evidence, viewed in the aspect most favorable to the government: (1) that the defendant knew that his return for each year was false, and (2) that he filed it with intent to defeat or evade a part of the tax due the United States. One may be presumed to intend the necessary and natural consequences of his acts. Reynolds v. United States, 98 U.S. 145, 167, 25 L.Ed. 244; Toof v. Martin, 13 Wall. 40, 48, 80 U.S. 40, 48, 20 L.Ed. 481; Wager v. Hall, 16 Wall. 584, 599, 83 U.S. 584, 599, 21 L.Ed. 504; General Motors Acceptance Corporation v. United States, 6 Cir., 40 F.2d 599, 600; Cleo Syrup Corporation v. Coca-Cola Co., 8 Cir., 139 F.2d 416, 419, 150 A.L.R. 1056, certiorari denied 321 U.S. 781, 64 S.Ct. 638, 88 L.Ed. 1074. The District Court committed no error in refusing to direct a verdict of acquittal."
In Achilli v. United States, 353 U.S. 373, at page 377, 77 S.Ct. 995, at page 997, 1 L.Ed.2d 918, the Court, in discussing an indictment under 26 U.S.C. § 145(b), said:
"We cannot hold that the classic method of evading the income tax, the filing of a false return, did not constitute an attempt `in any manner to defeat or evade' that tax."
In determining the sufficiency of the evidence to support the finding of the Commissioner, this Court must take that view of the evidence which is most favorable to the government and give to the government the benefit of all inferences which reasonably may be drawn in its favor. Viewing the evidence in this light, the Court is of the opinion that the finding of the Commissioner of probable cause is amply supported by the testimony.
In Brinegar v. United States, 338 U. S. 160, at page 175, 69 S.Ct. 1302, at page 1310, 93 L.Ed. 1879, the Court said:
"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.
"`The substance of all the definitions' of probable cause `is a reasonable ground for belief of guilt.' McCarthy v. De Armit, 99 Pa. 63, 69, quoted with approval in the Carroll opinion. Carroll v. U. S., 267 U.S. [132], at page 161, 45 S.Ct. [280], at page 288, 69 L.Ed. 543, 39 A.L.R. 790. And this `means less than evidence which would justify condemnation' or conviction, as Marshall, C. J., said for the Court more than a century ago in Locke v. United States, 7 Cranch 339, 348, 3 L.Ed. 364. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where `the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information *335 (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 39 A.L.R. 790."
The Court is convinced that the finding of the Commissioner that there was probable cause to believe that an offense was committed is sufficiently supported by the testimony and circumstances disclosed in the record and that the motion of the defendant to quash the warrant should be overruled, and an order overruling the motion is being entered today.
NOTES
[1] The last sentence in 26 U.S.C. § 3748 (a) (3), provides:

"Where a complaint is instituted before a commissioner of the United States within the period above limited, the time shall be extended until the discharge of the grand jury at its next session within the district."
In the oral argument it was stated that the Grand Jury for the Eastern District of Arkansas had been discharged only a few days prior to the filing of the complaint and that the next Grand Jury would be convened on September 15, 1958.
It is not necessary for the Court to determine whether the statute of limitations would bar prosecution of the defendant in the event the warrant of arrest is dismissed. In Pollock v. United States, 5 Cir., 202 F.2d 281, at page 282, the Court said:
"The indictment was returned more than six years after the income tax return for the year 1944 was filed with the collector. However, within the six year period, a complaint had been instituted before a United States Commissioner, a warrant issued thereon and the appellant arrested. The indictment was returned before the discharge of the grand jury at its next session within that district. It appears to us, therefore, that Count 1 was not barred by the statute of limitations." See, also, United States v. Clark, D.C.N.D.Ala., 122 F. Supp. 150.