William Andrew WASHINGTON,
Appellant,

v.

Donald CLEMMER et al., Appellees.

No. 18602.

United States Court of Appeals
District of Columbia Circuit.

On Motion for Summary Reversal

Argued May 8, 1964.

Filed May 11, 1964.

**716**

Messrs. Edward E. O'Neill, Washington, D. C., and Alan M. Perlman, Silver Spring, Md., for appellant.

Messrs. Frank Q. Nebeker and Lawrence S. Schaffner, Asst. U. S. Attys., for appellees.

Messrs. David C. Acheson, U. S. Atty., and John A. Terry, Asst. U. S. Atty., also entered appearances for appellees.

Before BAZELON, Chief Judge, and WASHINGTON and WRIGHT, Circuit Judges.

PER CURIAM:

This is a *habeas corpus* case challenging the lawfulness of the procedures used in a preliminary hearing. Appellant, an indigent juvenile, was charged with the capital offense of abetting a rape. After the juvenile court waived jurisdiction, he was brought before the United States Commissioner on May 7, 1964,[1] for a preliminary hearing to determine whether there was probable cause to believe that an offense had been committed and that the appellant had committed it. Rule 5(c), FED.R.CRIM.P. The Government's only witness was a police officer of the Sex Squad who testified to the complainant's story and to certain statements made by the appellant. The appellant, represented by a Legal Aid attorney, requested that a stenographic reporter be made available and that subpoenas issue for the complaining witness and other persons named as material witnesses in the complaint. These requests were denied; the first for alleged want of authority, and the second without explanation. The Commissioner found probable cause and held the appellant for action by the Grand Jury.

On May 8, the appellant petitioned the United States District Court for a writ of *habeas corpus*,[2] on the

---

1. The Commissioner's record indicates that Washington was first brought before the Commissioner on April 24, the day jurisdiction was waived by the juvenile court. At that time the hearing was continued until May 5 to allow him to contact his guardian regarding counsel. When the parties appeared on May 5, Washington, represented by counsel from the Legal Aid Agency, requested an immediate hearing. The Government requested a continuance until May 19 because the matter had been heard by a grand jury whose next return date was May 18. The Commissioner granted the continuance over the accused's objection. The next morning, however, the Government agreed to comply with the defendant's request for a prompt hearing. The hearing was held on May 7, 1964.

2. *Habeas corpus* will lie for this purpose, both at common law, see CHURCH, HABEAS CORPUS §§ 234, 237, and p. 332 n. 2 (1893), and in the federal system, see Ex parte Bollman, 8 U.S. (4 Cranch) 75, 98, 2 L.Ed. 554 (1807) (per Marshall, C. J.) (D.C. case); United States v. Berry, D. Colo., 4 F. 779, 781 (1880), cited with approval in Collins v. Miller, 252 U.S. 364, 369, 40 S.Ct. 347, 64 L.Ed. 616 (1920) (per Brandeis, J.). See also HOUSEL & WALSER, DEFENDING AND PROSECUTING IN FEDERAL CRIMINAL CASES § 198 (2d ed. 1946); ORFIELD, CRIMINAL PROCEDURE FROM ARREST TO APPEAL 91 (1947); see generally Wood v. United States, 75 U.S.App.D.C. 274, 279, 128 F.2d 265, 270, 141 A.L.R. 1318 (1942); United States v. Florida, E.D. Ark., 165 F.Supp. 328 (1958); United

ground that he was being held illegally since the Commissioner's procedures were illegal. The petition was denied; the accused at once appealed to this court and moved for summary reversal. After oral argument, this court on May 9 issued its order reversing the District Court, directing that the writ issue forthwith, returnable before 4:00 P.M., May 11, and requiring that the writ be made absolute at that time unless a preliminary hearing complying with specified standards is held before then. The Government has now petitioned for recall of our mandate and for rehearing *en banc*. This memorandum opinion of the sitting division is intended to accompany the order of May 9.

## I.

The appellant requested the Commissioner to obtain a stenographic reporter for the preliminary hearing. As the Government concedes in its petition, the Commissioner has the authority to secure a reporter for his hearings.[3] The Commissioner's failure to grant the request here was error.

 Generally it would be desirable to record the testimony given at every stage of the criminal process. The preliminary hearing is an adversary judicial proceeding necessary to authorize continued constraint of the accused.[4] Absence of a transcript makes it difficult, if not impossible, to review the Commissioner's finding of probable cause.[5] And verbatim recording of testimony at an early stage of the process perpetuates the fresh memory of witnesses, making it available in case of subsequent death, disability, or flight, and allowing impeachment or refreshing of recollection at trial. Accordingly, early recording also serves to discourage threats against witnesses and suborning of perjury.

 And even if the absence of a transcript might ultimately be found not prejudicial, obviously it is not possible to predict such an eventuality, and the Commissioner should therefore ordinarily grant a request for a reporter.

We think these reasons justify the exercise of our supervisory power over the administration of criminal justice in the District of Columbia[6] to require stenographic recording of testimony at the preliminary hearing.

 We also think this course is required by minimal standards of fair and equal justice. Defendants who have funds are entitled to employ their own

States v. Zerbst, E.D.S.C., 111 F.Supp. 807 (1953), and cases cited therein.

3. We note that the Manual for United States Commissioners 10 (1948) provides that official court reporters may be secured by the Commissioner, unless they are then actually engaged in attendance upon a session of the court. We note also that there are at least 20 official court reporters in this Courthouse where the Commissioner holds hearings. And under the Court Reporter Act, 28 U.S.C. § 753(b), the District Court has sufficient authority to provide an official reporter to attend upon proceedings before the Commissioner. Moreover, there are also other stenographic reporters available to the United States Attorney and the Commissioner.

4. See Rule 5(b) and (c), FED.R.CRIM.P.; Di Bella v. United States, 369 U.S. 121, 131, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); Go-Bart Importing Co. v. United States, 282 U.S. 344, 352–354, 51 S.Ct. 153, 75 L.Ed. 374 (1931); Wood v. United States, *supra* Note 2, 75 U.S.App.D.C. at 279–280, 128 F.2d at 270–271, 141 A.L.R. 1318.

5. *Cf.* Naim v. Naim, 350 U.S. 891, 76 S. Ct. 151, 100 L.Ed. 784 (1955).

6. See Fisher v. United States, 328 U.S. 463, 476, 66 S.Ct. 1318, 90 L.Ed. 1382, 166 A.L.R. 1176 (1946); Griffin v. United States, 336 U.S. 704, 714, 717–718, 69 S. Ct. 814, 93 L.Ed. 993 (1949); Miller v. United States, 357 U.S. 301, 306, 78 S. Ct. 1190, 2 L.Ed.2d 1332 (1958); *cf.* McNabb v. United States, 318 U.S. 332, 340, 63 S.Ct. 608, 87 L.Ed. 819 (1943).

reporters.[7] To deny this opportunity to an indigent defendant would be to permit invidious discrimination based on wealth.[8] Furthermore, since the Government may have a reporter at the hearing,[9] the accused must be afforded the same right in order to meet the requirements of fundamental fairness.[10]

## II.

■ The defendant requested that subpoenas issue; the Commissioner denied the request without explanation. The United States Attorney concedes in his petition that the Commissioner has authority to secure subpoenas at the request of the defendant. Rule 5(c), FED. R.CRIM.P., guarantees to the accused before the Commissioner the right to "introduce evidence in his own behalf." Rule 17(a), FED.R.CRIM.P., provides that "A subpoena shall be issued by a commissioner in a proceeding before him, but it need not be under the seal of the court." We read Rules 5(c) and 17(a) to require the Commissioner to subpoena material witnesses reasonably requested by the accused. The Commissioner's failure to do so here was error.

■ Generally, a subpoena will issue as a matter of course on the request of counsel. If, however, the accused should aver that he cannot afford subpoena fees, Rule 17(b), FED.R.CRIM.P., would seem to be applicable: "The court or a judge thereof may order at any time that a subpoena be issued upon motion or request of an indigent defendant." As we said in Greenwell v. United States, 115 U.S.App.D.C. 44, 46, 317 F.2d 108, 110 (1963), "if the accused avers facts which, if true, would be relevant to any issue in the case, the requests for subpoenas must be granted, unless the averments are inherently incredible on their face, or unless the Government shows, either by introducing evidence or from matters already of record, that the averments are untrue or that the request is otherwise frivolous."

■ Likely to be called on this basis, in addition to alibi witnesses, are the complainant and other material witnesses named in the complaint who for some reason have not been called by the Government.[11]

■ As we noted in *Greenwell, supra,* at n. 5, the decisions of the Supreme Court require that the interpretation of the Rules, and the procedures under them, assure "to the greatest degree possible" " 'equal treatment for every litigant' before the bar of criminal justice, regardless of financial ability." [12] We are sure that the Commissioner and the District Court will have no difficulty in providing a procedure for the formal approval of indigent subpoenas by a judge which Rule 17(b) seems to require. We note that

---

7. "Either the defendant or the prosecution, if they so elect, may employ, at their own expense, a stenographer to take the testimony under oath, and make a verbatim record of the proceedings." Manual for United States Commissioners 10 (1948).

8. See Hardy v. United States, 375 U.S. 277, 280, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964); *id.* at 282–296, 84 S.Ct. at 428–435 (concurring opinion); Lane v. Brown, 372 U. S. 477, 483–484, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); Coppedge v. United States, 369 U.S. 438, 446–447, 82 S.Ct. 917, 8 L. Ed.2d 21, and cases cited n. 13 (1962); Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961); Griffin v. Illinois, 351 U.S. 12,. 17–18, 76 S.Ct. 585, 100 L.Ed. 891, 55 A.L.R.2d 1055 (1956); *cf.* Gideon v. Wainwright, 372 U.S. 335,

83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

9. See Note 7, *supra.*

10. *Cf.* Gideon v. Wainwright, *supra* Note 8, 372 U.S. at 344, 83 S.Ct. 792.

11. *Cf.* Wirtz v. Baldor Electric Co., 119 U.S.App.D.C. ——, ——; ——, 337 F.2d 518, 525–526 (1963). One obvious purpose of a preliminary hearing is to provide confrontation between accused and accuser. Consequently, ordinarily the complaining witness should be present to testify. Of course, if because of physical or psychological disability in a particular case the complaining witness should not be called, his presence may not be required.

12. See Note 8, *supra.*

the United States Attorney may secure subpoenas for defense witnesses in the preliminary hearing. It may well be that in proceedings before the Commissioner, in order to avoid the delay and inconvenience of formal application before the judge for the subpoenaing of witnesses under Rule 17(b), the Government may simply authorize the indigent's subpoenas. Whatever procedures are worked out, of course, must be such that no barriers are faced by the indigent accused in the securing of witnesses that are not faced by the wealthy.

### III.

 According to the Government's petition, our order of May 9, 1964, holds that, since the officer who testified at the hearing had no personal knowledge of the events described in the complaint, "his testimony provided an insufficient basis for appellant to be held for grand jury action." We do not so hold. Nor do we hold the contrary. We hold only that the summary notations in the Commissioner's Record of Proceedings fail to provide a sufficient basis for reviewing the determination of probable cause.[13] There are inherent inadequacies in any notes offered in lieu of a transcript. Here, the notes are ambiguous and incomplete, and counsel offer us conflicting versions of material parts of the testimony. Furthermore, we cannot discern from this record whether, under the circumstances, the Government's exclusive reliance on the officer's testimony was justified. The competency and sufficiency of the evidence necessary to establish probable cause depends on the circumstances of each case. It will be time enough to review the adequacy of the testimony offered in a case where we know, from a transcript, just what the testimony was.

The order of May 9 remains the order of this court. The return date of the writ of *habeas corpus* will be changed, however, to not later than Wednesday, May 13, 1964, at 4:00 P.M., to allow the Government, if it is so advised, to request a stay from the Circuit Justice and to petition for a writ of certiorari. The mandate is accordingly recalled, so amended, and reissued. Opinions supplementing this memorandum may be filed at a later date.

So ordered.

### AMENDED ORDER

PER CURIAM.

The above-entitled case came on for hearing on appellant's motion to summarily reverse the order of the District Court denying appellant's petition for a writ of *habeas corpus* and said motion was argued by counsel.

It appearing from the record of proceedings before the United States Commissioner in Commissioner's Docket 12, Case Number 474, that appellant's preliminary hearing was held on May 7, 1964, on a complaint charging rape, a capital offense, and it

Further appearing that appellant's request to obtain a stenographic reporter was denied, and it

Further appearing that appellant's request that subpoenas for witnesses be issued was denied without explanation, and it

Further appearing that the sole witness for the United States had no personal knowledge of the event described in the complaint, and it

Further appearing that the record is insufficient to determine whether there was competent evidence to establish probable cause for detention of the accused;

It therefore appearing to the court that the procedures adopted by the United States Commissioner were inadequate under the circumstances, it is

ORDERED by the Court that the motion for summary reversal be granted and the order of the District Court appealed from is hereby reversed. This cause is remanded to the District Court with in-

---

13. See Note 5, *supra*.

structions to vacate its order and to issue forthwith a writ of *habeas corpus*, returnable at or before 4:00 P.M., Wednesday, May 13, 1964. The said writ is to be made absolute at that time unless the return shows that prior thereto a preliminary hearing before any committing magistrate, under Rule 5 of the Federal Rules of Criminal Procedure, has been held in compliance with the following:

(1) That probable cause be established by competent evidence.

(2) That there be present at the preliminary hearing a stenographic reporter furnished by the United States District Court or the United States Attorney or the committing magistrate.

(3) That reasonable requests for subpoenas be granted in compliance with Rule 5(c) and Rule 17 of the Federal Rules of Criminal Procedure. (See Greenwell v. United States, 115 U.S.App.D.C. 44, 317 F.2d 108 (1963).)

It is FURTHER ORDERED that the Clerk of this court issue a certified copy of this order in lieu of mandate forthwith. The court retains jurisdiction of this cause to entertain motions to assure prompt compliance with its mandate.

Statements may be filed by the members of the court at a later date.

Dated May 11, 1964.

[The Government thereupon filed its motions for rehearing *en banc* and for other relief, with disposition as follows:]

Before BAZELON, Chief Judge and WILBUR K. MILLER, FAHY, WASHINGTON, DANAHER, BASTIAN, BURGER, WRIGHT and McGOWAN, Circuit Judges, in Chambers.

### ORDER

PER CURIAM.

On consideration of appellees' petition to recall certified copy of order dated May 9, 1964, in lieu of mandate and for rehearing *en banc* and of appellees' supplement thereto filed on May 11, 1964, it is

ORDERED by the court *en banc* that appellees' aforesaid petition as supplemented is hereby denied.

Circuit Judge Danaher for the reasons set forth in his statement this day filed, in which Circuit Judges Miller and Bastian join, would grant the appellees' several motions for recall of mandate, rehearing en banc with respect to the opinion of May 11, 1964, and hearing *en banc* of appellees' motion filed May 15, 1964.

Circuit Judges Miller and Bastian would grant appellees' several motions for the reasons set forth in Judge Danaher's statement filed today.

Circuit Judge Burger votes against rehearing *en banc* for the reasons set forth in his separate statement filed today.

Dated: June 12, 1964.

### ORDER

PER CURIAM.

On consideration of appellees' motion, filed on May 15, 1964, for hearing *en banc* of motion for immediate review, it is

ORDERED by the court *en banc* that appellees' aforesaid motion is hereby denied.

Circuit Judge Danaher for the reasons set forth in his statement this day filed, in which Circuit Judges Miller and Bastian join, would grant the appellees' several motions for recall of mandate, rehearing *en banc* with respect to the opinion of May 11, 1964, and hearing en banc of appellees' motion filed May 15, 1964.

Circuit Judges Miller and Bastian would grant appellees' several motions for the reasons set forth in Judge Danaher's statement filed today.

Circuit Judge Burger votes against hearing *en banc* for the reasons set forth in his separate statement filed today.

Dated: June 12, 1964.

DANAHER, Circuit Judge, with whom WILBUR K. MILLER and BASTIAN,

Circuit Judges, join, filed the following statement:

In my view this case should have been dismissed on May 9, 1964. The intervening steps which since that date have engaged the attention of this court have culminated in an opinion by the sitting division which today has been released. This latest opinion indirectly incorporates by reference the division's memorandum opinion dated May 11, 1964. That opinion supplemented and purported to justify the order of the division entered May 9, 1964 which the Government asked the court to recall. The Government also then asked for rehearing *en banc*. I think the Government's motions should have been granted, and I wish to outline briefly certain grounds which predicated my vote.

Let it be noted at the outset that the appellant did not challenge the jurisdiction of the United States Commissioner as an officer of the District Court, nor did he levy an attack upon the statute defining the offense under which the appellant had been charged. He claimed in his petition for a writ of *habeas corpus* that he was illegally detained in that he had been allegedly denied certain procedural rights. The District Court denied relief. A division of this court— erroneously, I believe—entertained an appeal from the denial of the writ.

I

"It is well settled that in the absence of exceptional circumstances in criminal cases the regular judicial procedure should be followed and *habeas corpus* should not be granted in advance of a trial." Jones v. Perkins, 245 U.S. 390, 391, 38 S.Ct. 166, 62 L.Ed. 358 (1918).

"The writ of *habeas corpus* is not intended to serve the office of a writ of error even after verdict; and, for still stronger reasons, it is not available to a defendant before trial * * *." Johnson v. Hoy, 227 U.S. 245, 247, 33 S.Ct. 240, 241, 57 L.Ed. 497 (1913).

"It is plain, however, that the writ is not designed for collateral review of errors of law committed by the trial court—the existence of any evidence to support the conviction, irregularities in the grand jury procedure, departure from a statutory grant of time in which to prepare for trial, and other errors in trial procedure which do not cross the jurisdictional line." Sunal v. Large, 332 U.S. 174, 179, 67 S.Ct. 1588, 1591, 91 L.Ed. 1982 (1947).

I think the appeal should have been dismissed. The course taken by the sitting division opens up countless applications [1] for the writ with subsequent appeal, leading inevitably to interminable delays in the trial of criminal cases. The attack here had not been levied upon the jurisdiction and authority of the court to proceed and investigate and determine the truth of the charge, but upon the sufficiency of the evidence to establish probable cause to detain the accused. This has never been held to be within the province of a writ of *habeas corpus*. "Upon *habeas corpus* the court examines only the power and authority of the court to act, not the correctness of its conclusions." Harlan v. McGourin, 218 U.S. 442, 448, 31 S.Ct. 44, 47, 54 L.Ed. 1101 (1910). Application of such principles was clearly called for on the record here.

II

The detention of the appellant was lawful, for before the Commissioner it was the appellant's "right not to be held in the absence of a finding by the Commissioner of probable cause that he has committed an offense." Giordenello v. United States, 357 U.S. 480, 484, 78 S. Ct. 1245, 1249, 2 L.Ed.2d 1503 (1958). Here the Commissioner found probable cause to hold the appellant for grand jury action since the evidence had been submitted to the grand jury on May 5. Before the Commissioner were facts of which the following may be taken to be the substance.

---

1. There were 1,183 cases docketed by the United States Commissioner during the past year.

Detective Holden was sworn and testified that he had been assigned to the Metropolitan Police Department Sex Squad and was on duty on April 5, 1964, about 1:20 A.M. He then learned from one Joyce Peoples that about 12:45 A. M. she had hailed a taxicab occupied by two men. She gave the address of her destination, but the driver turned the car about and drove in the opposite direction. He said "OK, baby, I'll turn around and take you where you want to go." But he took her to a point opposite 44 Channing Street. The complainant took the officer to the address and pointed out the spot at which she had attempted to get out of the cab. One of the two men struck her, put a knife against her throat and ordered her back into the cab. That man was Washington. The other man, Burton, raped the girl while Washington sat behind the wheel.

Expressing fear of the presence of police, the driver drove the cab to another location. It was to be Washington's turn. As the two men were in the process of changing positions with Washington undertaking to get into the back and Burton getting into the front of the car, the complainant jumped from the cab, screaming. A passerby came to her aid, and the cab pulled away.

Equipped with such facts, Detective Holden passed along the information to the Robbery Squad which had broadcast a "lookout" for an ABC cab, said to have been stolen in another section of the city. The Robbery Squad by this time had apprehended Washington and Burton.

At No. 2 Precinct a line-up was created by Detective Holden. The complaining witness positively identified Washington and Burton. Thereupon, in confrontation, she stated in the presence of Washington that he was the man driving the cab, he had not had intercourse with her but the other man did. She said that Washington was the one who had punched her in the mouth and put a knife against her. At first, both Burton and Washington denied knowledge of the episode. When separated, Washington stated to Detective Holden: "You heard what the woman said. Everything she said was true." He added that he had not raped the complaining witness. Thereafter Detective Holden searched the taxicab. On the back seat he found a woman's shoe. The complaining witness identified the shoe as hers.

The Commissioner on such evidence ruled that probable cause had been established. If his finding were open to review, I would affirm without the slightest question.

Here, the sitting division acted without submitting its proposed opinion to the remaining members of the court, despite our practice to the contrary. Indeed it appears that the sitting division asked the United States Attorney that the court "have your assurance that no indictment will be returned against this man on Monday." Of course, were the grand jury's indictment to have thus been returned, the pending application for *habeas corpus* would have been rendered moot. Thus the sitting division would not have had the opportunity to render the *ad hoc* opinion which I think should have been considered before the court *en banc*.

### III

The sitting division purports to justify its action on two grounds, *inter alia*. Before amendment by the May 12th order to read "One obvious purpose * * *", the May 11th opinion had read: "The obvious purpose of a preliminary hearing is to provide confrontation between accused and accuser." No authority is cited; I dare say no case can be found which so states. I reject both versions. Compare Jordon v. Bondy, 72 App.D.C. 360, 365, 114 F.2d 599, 603 (1940) (opinion by the late Mr. Justice Rutledge). Additionally, our colleagues think their statements of reasons will "justify the exercise of our supervisory power over

the administration of criminal justice in the District of Columbia to require stenographic recording of testimony at the preliminary hearing."

Such attempts completely to reverse settled modes of procedure without action by the entire court require, in my view, consideration by the whole court. 28 U.S.C. § 332 (1958) authorizes the Judicial Council composed of all of the active judges of the circuit to "make all necessary orders for the effective and expeditious administration of the business of the courts within its circuit." Propositions such as have here been advanced should have been considered by all of us.

## IV

Our colleagues reject the basis for the Commissioner's conclusion on the ground that the officer who testified at the hearing "had no personal knowledge of the events described in the complaint." But he had received the complaint from the young woman; other officers had located the stolen car; the officer examined the stolen car; and he found the girl's shoe; she identified it as hers. In addition, the girl identified this appellant and his co-defendant in their presence; the appellant told the officer that what the girl said was true. Even were we free in this proceeding to review the Commissioner's judicial decision, it has not been shown that he erred. In Holt v. United States, 218 U.S. 245, 247, 31 S.Ct. 2, 54 L.Ed. 1021 (1910), Mr. Justice Holmes pointed out that an officer had testified before a grand jury as to admissions by the prisoner, obtained under circumstances which made them incompetent. Speaking for a unanimous Court, he concluded that there was no basis for reviewing the discretion of the trier. Again, in Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956), Mr. Justice Black discussed the subject of inadequate or incompetent evidence before the grand jury. Were an indictment to be subject to challenge on such grounds, he wrote, "the resulting delay would be great indeed. The

result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, *like an information drawn by the prosecutor*, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." (Emphasis added.)

In short, the Commissioner's inquiry was "whether or not there is probable cause to believe that an offense has been committed and that the defendant has committed it. If the Commissioner so finds, the defendant is then held to answer in the District Court. There is, however, no requirement in the Constitution or otherwise that a defendant be given a preliminary hearing before he may be brought into a court already having jurisdiction of the charge against him." Barrett v. United States, 270 F.2d 772, 775 (8 Cir. 1959). The Commissioner's conclusion did not depend upon calling *all* the witnesses the Government might later produce or even only those the accused might desire to have produced. Once satisfied that the hearing had served its purpose, the Commissioner held the appellant to answer for the offense as charged. The evidence from the officer not only was sufficient; the Commissioner's ruling is not reviewable in this proceeding. As to the competence of the testimony of Detective Holden under the circumstances here, I suggest there was no error.

In any event, "The correctness of a trial court's rejection even of a constitutional claim made by the accused in the process of prosecution must await his conviction before its reconsideration by an appellate tribunal." Cobbledick v. United States, 309 U.S. 323, 325–326, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940); and see Di Bella v. United States, 369 U.S.

121, 124, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962).

No rights cognizable in *habeas corpus* were here denied. In different context, to be sure, this court has even held that "There is no constitutional right to a preliminary hearing prior to indictment or prior to trial." Clarke v. Huff, 73 App.D.C. 351, 119 F.2d 204 (1941).

## V

I will pass over other respects in which I disagree from the opinions prepared by the sitting division. I would have granted the Government's motions.

BURGER, Circuit Judge (statement as to reasons for vote on Motion for hearing en banc):

Although I do not agree with the holding of the Motions Panel that the United States Commissioner abused his discretion in refusing to compel the appearance of the complaining witness in this case, I do not think that issue alone warrants en banc consideration. However, I agree with the substance of the views expressed by Judge Danaher (with Judges Miller and Bastian).[1]

If, in fact, a Motions Panel of the Court was undertaking to lay down a rule to require transcripts in all preliminary hearings, or require government witnesses to be subpoenaed in all cases, or altering the long standing law as to what constitutes competent evidence to warrant holding an accused for the Grand Jury, I would surely vote for en banc consideration. However, I am not willing to assume that a Motions Panel would undertake to amend, in such a fundamental and far reaching manner, the Federal Rules of Criminal Procedure, which Congress approved for the administration of justice; such an action would be reckless and irresponsible.

I refrain from voting for rehearing en banc because it is now clear from the revised per curiam memorandum of the Motions Panel that the Motions Panel has modified its position substantially from that embodied in the order of May 9, 1964 and per curiam memorandum dated May 11, 1964 issued shortly after the emergency hearing. The Motions Panel now decides nothing more than that, in this case and on this record, the accused was entitled to have the complaining witness called as a witness on his own behalf before the Commissioner; this is explicitly based on the defendant's sworn statement that if the complaining witness was produced she would not identify him as the attacker and he would thus be released and vindicated forthwith.

As I see it, the Motions Panel now explicitly negates any intention of deciding probable cause cannot be established by hearsay evidence before the United States Commissioner or other magistrate in order to hold an accused for the Grand Jury. Few legal concepts have been more universally accepted than the proposition that "competent" evidence before a magistrate to establish probable cause at that stage is very different from "competent" evidence in the context of a criminal trial. The standard of proof before the committing magistrate or for issuance of a warrant is "accordingly correlative to what must be proved." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). An arrest can be made, a warrant can issue and a Grand Jury can indict on hearsay and other forms of evidence not competent for admission at trial. See Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). A fortiori the intermediate step of deciding to hold an accused until a Grand Jury can

---

1. I particularly agree with the observations concerning the action of the Motions Panel of this Court in extracting a commitment that the Grand Jury would not return an indictment. A Grand Jury is an independent body and neither this court nor any other court ought to interfere gratuitously with its deliberations, especially for the sole purpose of preventing mootness of an issue because some members of the court were seemingly anxious to reach it.

consider evidence against him may be taken on such evidence.

It also seems clear that the per curiam opinions do not lay down any rule of general application that a transcript is required in all cases before the United States Commissioner. We know, of course, that in the majority of hearings before a committing magistrate, the substance of the police information constituting probable cause can readily and adequately be summarized in a very brief statement without a verbatim record since "the hearings before the commissioner are merely for the purpose of determining whether there is probable cause for holding the defendant for action by the Grand Jury, and testimony is rarely taken in accordance with the usual rules of evidence."[2] The need for a verbatim report and transcript thus remains discretionary with the United States Commissioner or other judicial officer, his exercise of that discretion being reviewable by the District Court and by this Court.

Since no change is made in the law governing the scope, content and purpose of the preliminary hearing, the quantum or quality of evidence required to hold an accused for the Grand Jury or in the matter of requiring transcripts in all cases, I do not vote to have the court en banc hear and pass on the narrow holding of the Motions Panel even though on this record I would not conclude that the United States Commissioner abused his discretion in refusing to authorize a subpoena.

2. Interestingly, Chief Justice Warren in an address to the American Law Institute meeting in Washington, D. C., May 26, 1964, commented on various changes under study as to preliminary hearings. Commenting on pending legislation for revision of the United States Commissioner system, including a requirement, *inter alia*, to conduct such proceedings "under the usual rules of evidence to determine whether there is probable cause for holding the defendant to answer a criminal charge in the district court," he said:

"This is *not authorized or required by present federal practice* since at present the hearings before the commissioner are merely for the purpose of deter-

mining whether there is probable cause for holding the defendant for action by the grand jury, and testimony is rarely taken in accordance with the usual rules of evidence. * * *

Address Delivered by Earl Warren, Chief Justice of the United States, at the Annual Meeting of the American Law Institute May 20, 1964, pp. 17–19, and circulated to all United States Judges by the Administrative Office of the U. S. Courts.

This would seem to indicate that the Chief Justice of the United States regards these changes as calling for the acquiescence of Congress.