**UNITED STATES of America**

v.

**Michael Henry HINKLE.**

**Crim. No. 1794–69.**

United States District Court
District of Columbia.

Dec. 10, 1969.

118

Thomas A. Flannery, U. S. Atty., Nicholas Nunzio and Daniel Toomey, Asst. U. S. Attys., Washington, D. C., for the United States.

Robert L. Weinberg, John J. F. Mathews and Thomas W. Farquhar, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

CURRAN, Chief Judge.

There comes before the Court at this time a Notice of Appeal from the denial on November 7, 1969, of defendant's motion to re-open the preliminary hearing held September 30, 1969, before the Honorable John F. Doyle, United States Magistrate. We are asked to issue an order, in the nature of mandamus, directing the United States Magistrate to set aside the order holding the defendant to answer in this Court and to re-open the preliminary hearing.

Since the filing of the Notice of Appeal referred to above, an indictment has been returned by the Grand Jury.

This Court, like many others, has increasingly found itself virtually inundated by such appeals, the vast majority of which are wholly devoid of merit and appear styled primarily for the purpose of delay. This dilatory procedure has, and continues, to result in the expenditure of valuable judicial time and machinery which would be more fruitfully expended in the administration of justice in other areas more urgently deserving of such time and attention.

Because the source of this increasing tendency to challenge the preliminary hearing may be due in large part to the ambiguity that surrounds the proper purpose of the preliminary hearing, this Court takes occasion to respond not only to the merits of the challenge in the instant case, but also to review the posture of the preliminary hearing in the prosecution of criminal cases generally, with an eye directed at discerning the appropriate function the preliminary hearing is to serve. To be responsive, such a review must necessarily encompass not only the statutory enactments applicable to the preliminary hearing and the relevant provisions of the Federal Rules of Criminal Procedure, but also the function and purposes that have been judicially ascribed to the preliminary hearing.

The challenge in the instant case is appropriate for such a review in that it is illustrative of what has become a matter of routine practice. Specifically, the challenge in the instant case raises two major questions: (1) the purpose to be served by the preliminary hearing, and (2) the burden the Government must carry in order that the accused may be properly held over for possible action by the Grand Jury.

The most recent statutory enactment dealing specifically with the function to be served by the preliminary hearing is the Federal Magistrates Act of 1968, effective October 17, 1968, and appearing as an amendment to Title 18, United States Code, Section 3060. Formerly, Title 18, U.S.C. Sec. 3060 provided:

"Preliminary examination—(Rule) SEE FEDERAL RULES OF CRIMINAL PROCEDURE Proceedings before commissioner, appearance, advice as to right to counsel, hearing, Rule 5."

As amended, however, Sec. 3060 provides a resolution of the questions posed by the instant case. First, the newly amended statute sets forth in detail those situations in which it is necessary to hold a preliminary hearing; and second, it dictates the function the preliminary hearing is to serve when held.

In an order of this Court issued September 22, 1969, in United States v. Meyers, 303 F.Supp. 1383, this Court took a preliminary step in the analysis of Sec. 3060 and in the impact it has had on the preliminary hearing procedure, focusing on subsection (e) of Sec. 3060, which by its very language qualifies the accused's right to a preliminary examination. This Court's interpretation of subsection (e), as stated in the *Meyers* case, gives effect to the provision as it is written, the foremost obligation of statutory construction, while at the same time interpreting the provision in a manner consistent with the legislative intent ascribed to the statute as expressed by

Senator Tydings, the sponsor of the Act. The language of subsection (e) is explicit and leaves no room for judicial speculation. This Court affirms its interpretation of subsection (e) of Sec. 3060 as being unambiguously aimed at dispensing with the need for a preliminary hearing in those cases in which an indictment is timely returned in accordance with the procedures prescribed by Sec. 3060(e). Further elaboration at this time upon subsection (e) and the issue posed in the *Meyers* case would be superfluous, for the question is well settled by the very language of the provision itself. Hence, the attention of this Court will be focused upon those situations in which a preliminary hearing is properly held in accordance with Sec. 3060, looking particularly at the function to be served by the hearing, as stated in subsection (a) of Sec. 3060.

 It has been suggested that when Rule 5(c) of the Federal Rules of Criminal Procedure and the newly amended Sec. 3060 are read concomitantly that Rule 5(c) must be deemed to have been implicitly repealed by Sec. 3060, inasmuch as Sec. 3060 deals with much of the same subject matter as covered by Rule 5(c). Without engaging in a detailed discussion of the relationship of the two provisions, it appears to this Court that Sec. 3060 as amended does not repeal Rule 5(c), as there is no conflict posed when the two are read in *pari materia*. Rather, Sec. 3060 serves as a clarification of the standard to be applied in determining whether in a particular case a preliminary hearing is called for, and if so, the purpose of the preliminary hearing. On the other hand, Rule 5(c) complements Sec. 3060 by providing the evidentiary and procedural rules to be applied when a hearing is held. However, to the extent that Rule 5 may have been read in the past to give every person charged with an offense the right to appear at a preliminary hearing, Sec. 3060(e) qualifies this right by dispensing with the necessity of holding a preliminary hearing when an indictment has been timely returned by the Government, as provided by Sec. 3060(e). The Grand Jury, having acted by the return of an indictment, renders the magistrate powerless to conduct an "appellate" review of that action, for the power to indict is vested solely within the province of the Grand Jury.

Although the United States Court of Appeals for the District of Columbia Circuit has commented frequently on the preliminary hearing procedure in this jurisdiction, the proper function to be served by the hearing has become increasingly more uncertain. An examination of the case law developed by the appellate court, authority which would normally be considered binding on the lower courts, reveals that the case law of this jurisdiction, when juxtaposed to the recently enacted Federal Magistrates Act, poses an obvious conflict between the two insofar as the function to be served by the hearing is concerned. At the outset, it is significant to note that the body of law in this jurisdiction dealing with the preliminary hearing procedure was developed by the appellate court prior to the amendment of Sec. 3060, and that since the enactment of the Federal Magistrates Act, the Court of Appeals has not had occasion to respond to the issue as presented in the instant case. However, the directive of Sec. 3060(a) is clear and definite; as regards the function of the preliminary hearing, subsection (a) provides that

" * * * a preliminary examination shall be held * * * *to determine whether there is probable cause to believe that an offense has been committed and that the arrested person has committed it*". (Emphasis added).

The trilogy of cases routinely cited by a defendant when attacking as faulty the conduct of the preliminary hearing is Washington v. Clemmer, 119 U.S. App.D.C. 216, 339 F.2d 715 (1964); Blue v. United States, 119 U.S.App.D.C. 315, 342 F.2d 894 (1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d 964 (1965); and Ross v. Sirica, 127 U.S.App. D.C. 10, 380 F.2d 557 (1967); the in-

stant case is no exception. In *Washington*, the appellate court observed,

> "One obvious purpose of a preliminary hearing is to provide confrontation between accused and accuser." 339 F.2d at 715, n. 11.

Although speaking to the accused's right of confrontation, the Court left open the question whether hearsay testimony is competent to establish probable cause. The Court did not definitively state whether the complaining witness must appear at the hearing, but seemingly indicated that the accused could be provided the necessary confrontation, for the purpose of determining probable cause, without the complaining witness having appeared. This Court finds particular significance in the comment of Circuit Judge (now Chief Justice) Burger's statement as to the reasons for his vote on the motion for a rehearing *en banc* in *Washington* that,

> "As I see it, the Motions Panel explicitly negates any intention of deciding probable cause cannot be established by hearsay evidence \* \* \* in order to hold an accused for the Grand Jury. Few legal concepts have been more universally accepted than the proposition that 'competent' evidence before a magistrate to establish probable cause at that stage is very different from 'competent' evidence in the context of a criminal trial. \* \* \* *A fortiori* the intermediate step of deciding to hold an accused until a Grand Jury can consider evidence against him may be taken on such evidence." 339 F.2d at 724.

■ This Court is in complete agreement with the proposition that probable cause may be demonstrated other than from the mouth of the complaining witness himself.

The next significant step taken by the United States Court of Appeals for the District of Columbia Circuit in their attempt to delineate the function of the preliminary hearing was taken in *Blue, supra,* wherein the appellate court stated

that the preliminary hearing is to afford to the accused,

> "(1) an opportunity to establish that there is no probable cause for his continued detention and thereby regain his liberty and, possibly, escape prosecution, and (2) a chance to learn in advance of trial the foundations of the charge and the evidence that will comprise the government's case against him".

Three years later, in *Ross, supra,* the court affirmed its *Blue* doctrine and further stated the defendant's rights at the preliminary hearing to include compulsory attendance of witnesses when the proper showing is timely made that the witnesses are material to the issue of probable cause.

■ It is evident that the net effect of these and other opinions rendered by the United States Court of Appeals for the District of Columbia Circuit has been to elevate into a right to be afforded the defendant not only the opportunity to contest the issue of probable cause, but also to use the preliminary hearing as a discovery vehicle for production of the government's case. Throughout this period in which the appellate court has methodically proceeded to attribute to the preliminary hearing its use as a form of discovery, the Court has relied to a great extent on Rule 5(c) as requiring this expansion. However, the mandate for the Court's interpretation surely does not appear in the language of the rule as it is written, for Rule 5(c) speaks solely in terms of the preliminary hearing as a procedure for determining

> " \* \* \* that there is probable cause to believe that an offense has been committed and that the defendant has committed it \* \* \*.";

the identical language used in the Federal Magistrates Act. Therefore, this Court, confronted with the conflicting authority, feels that the law as developed by the United States Court of Appeals for the District of Columbia Circuit, to the extent that it is inconsistent with Sec. 3060(a) and would attribute to the

preliminary hearing a discovery function, must be deemed overruled by Sec. 3060(a), which states the sole function to be one of determining probable cause. The directive of the statute must prevail, and this Court considers itself bound accordingly.

Moreover, this Court feels constrained to follow the directive of Sec. 3060(a), for it appears that in the effort by the appellate court of this jurisdiction to expand the function of the preliminary hearing, thereby creating near mythical rights to be enjoyed by the defendant arrested before indictment, an invidious discrimination has been created. If the right of discovery existed at all at the preliminary hearing stage—a function which the statute does not attribute to the hearing and one which this Court firmly believes does not exist, a function heretofore deemed by the appellate court to be an essential ingredient of the accused's defense—the same right would have to be accorded the individual arrested after the return of a grand jury original indictment. As perspicuously stated by the Second Circuit in Sciortino v. Zampano, 385 F.2d 132, 134 (2d Cir. 1967),

> "It defies logic, for example, to allow such discovery to defendants who happen to be arrested before indictment and to deny it to those who are arrested after indictment."

By following to its logical conclusion the appellate court's expansion of the role of the preliminary hearing, it becomes clear that the hearing would take on overtones of a trial, with the outcome seemingly based on who produces the preponderance of the evidence, or some standard as equally inappropriate for a preliminary hearing, rather than being as it should, a proceeding at which the government has the sole burden of establishing *probable cause* to hold the accused for possible action of the Grand Jury. This Court is unable to countenance any formula of expansion of the preliminary hearing procedure which would result in the preliminary hearing becoming a forum for discovery. The function of the preliminary hearing, as prescribed by Sec. 3060(a), makes it very clear that the preliminary hearing is not the proper time in the criminal proceedings for the accused to gather from the government files an arsenal of knowledge with which to wage his defense. This does not mean, nor does this Court intend to imply, that a more complete disclosure, before trial, may not be desirable. However, in discharging its burden of establishing probable cause, the government should not be compelled to expose the intricacies of its case against the accused; such exposure is properly made when the government presents its case to the Grand Jury. As stated by Circuit Judges McGowan and Leventhal in their statement as to why they voted to deny rehearing *en banc* in Ross v. Sirica, *supra*, 380 F.2d at 564–565,

> " * * * the preliminary hearing is neither a proper nor an adequate substitution for the more comprehensive discovery which we think those Rules should be enlarged to provide.
>
> \* \* \* \* \* \*
>
> "We believe that discovery in criminal cases should stand on its own feet. It should not be inextricably entwined in the process of establishing probable cause * * *."

The scope of pretrial discovery as presently deemed essential is provided by the Federal Rules of Criminal Procedure. Although many may feel that the scope of discovery should be substantially enlarged, it is not the prerogative of the courts to undertake this expansion by distorting the function of the preliminary hearing. To the extent that the language of *Blue* may have previously been read to lead one to believe that discovery is properly had at the preliminary hearing, this misconception of *Blue* must be corrected. Certainly, there will be a limited degree of "discovery" at the preliminary hearing as the government attempts to show probable cause for detention of the accused, but this "discovery" is purely an inevitable by-product of the burden the government carries at the hearing; it is not the function of the

hearing nor should the language of *Blue* be so misinterpreted or misconstrued in an effort to make the hearing something that it is not.

Directing attention now to the preliminary hearing held in the instant case, it is the defendant's assertion that he was denied the right to contest the issue of probable cause. This assertion is premised upon the contention that the defendant's right to cross-examine the witnesses against him was improperly restricted and that he was denied the right to introduce evidence in his own behalf in accordance with the procedural requirements of Rule 5(c).

The Government called as its first witness Officer Clarence J. Day, assigned to the homicide unit of the Metropolitan Police Department. The substance of Officer Day's testimony on direct examination was that he took part in the investigation into the death of Alfred R. Robinson; that the investigation revealed that at about 1:20 a. m., September 21, 1969, there was an altercation at 627 Acker Street, N. E.; that as a result of the altercation, the decedent was stabbed in the chest and driven by private automobile to Rogers Memorial Hospital; that the decedent was pronounced dead at approximately 6:50 a. m. the same morning; that an autopsy was performed by Dr. Richard L. Whelton and the cause of death determined to be due to a shock in the right hemathrax, a stab wound to the heart.

On cross-examination of Officer Day, defense counsel probed further into the matters to which Officer Day had testified on direct; Officer Day's testimony remained consistent with that given on direct. Defense counsel did attempt to elicit from Officer Day the names of the other officers who took part in the investigation into the death of Mr. Robinson, at which time an objection was made by the Government. Magistrate Doyle sustained the objection and stated that he would,

" * * * limit the examination of the officer to the scope of the direct. If you (defense) wish to add him (as)

your witness after the Government has concluded, then, I will * * * rule upon the advisability or the requirement or the need for testimony at that time". (Tr. 6)

Resuming with his cross-examination, defense counsel inquired whether the officer had interviewed anyone at 627 Acker Street, N.E., to which the witness replied affirmatively. However, at counsel's attempt to elicit the names of those persons, the Government objected. Magistrate Doyle, sustaining the objection, stated that he would not " * * * permit the use of the hearing for the sole purpose of discovery" (Tr. 8). The cross-examination continued and Officer Day acknowledged that he did not start his investigation until he reported to work the morning of the decedent's death and that he began his investigation by first obtaining some information from the "write-up sheet" that was left by the "midnight crew". The Government's objection to defense counsel's inquiry into the name of the officer who wrote the original report was overruled and the witness directed to give the officer's name, which he did (Tr. 10). At this point, defense counsel stated, "Okay, we have no further questions", and the cross-examination was concluded.

The Government next called Paul E. Posten, an alleged eye-witness to the incident. On direct examination, the substance of Mr. Posten's testimony was that he had previously known the deceased and had been a friend of his; that at the time and place in question, there had been a party going on; that the defendant, Hinkle, approached Mr. Robinson and tried to take his beer, and that when Mr. Robinson refused to give the defendant his beer, the defendant pulled out a knife and Mr. Robinson and the defendant walked to the door; that the defendant said something and then struck Mr. Robinson with the knife. Mr. Posten testified that he was about four feet away from the two of them when the incident took place.

On cross-examination of Mr. Posten, defense counsel made a detailed in-

quiry into the events that transpired on the night in question, including the extent to which Mr. Posten had been drinking and the extent of his friendship with the deceased. Counsel further asked Mr. Posten his age and address. As the cross-examination continued, Mr. Posten acknowledged that there was another person present at the time of the stabbing. The witness further testified that the person giving the party was the one who took Mr. Robinson to the hospital, but that he, Posten, did not know the name of that person. In short, defense counsel's cross-examination proceeded smoothly and without interruption.

At the completion of the cross-examination of Mr. Posten, defense counsel sought to recall Officer Day. The purpose for recalling the officer was, as stated by counsel, "I think the issue that I'm trying to direct myself to is the sequence right up to the death of this young man". Magistrate Doyle replied that the sequence seemed fairly well established,

> "He (Mr. Robinson) was next taken to * * * the hospital—the treatment of the hospital * * * is not present in the matter, and he expired as a result of the—as a result of shock, stab wounds—resulting from a stab wound to the heart".

In essence, it appears that defense counsel was suggesting that the Coroner's report of the cause of death was not reliable hearsay evidence upon which, when taken in conjunction with the other testimony produced, the Magistrate could find probable cause for holding the defendant for action by the Grand Jury. Further, counsel apparently felt the scope of the direct examination was very constricted and would have preferred to have had the Government engage in a broader direct examination. However, as stated by Magistrate Doyle,

> "It's an amazingly constricted direct testimony because the Government chose to restrict it. If the Government chooses to restrict testimony of the witness on the stand, they have an absolute right to do so; if the total

evidence is not sufficient * * * I will throw the case out as being insufficient". (Tr. 21–22)

Defense counsel then stated that he " * * * would like to check and see if there are other areas where I could call him." Magistrate Doyle replied, "Go ahead, I'm not going to restrict you". At this point, the fishing expedition which defense counsel was attempting was made obvious by his statement that he would like to call Officer Day for the purpose of inquiring as to the identity of the other witness. Appropriately, Magistrate Doyle did not allow this and stated what this Court believes to be a correct and concise statement of the proper function of a preliminary hearing,

> "I am convinced that the preliminary hearing under the Magistrates Act was not designed to introduce a discovery procedure into the hearing. In my opinion, that is a discovery item, properly the province of 16 (Rule 16), not the province of the probable cause hearing * * * " (Tr. 22–23).

Defense counsel then proffered the four areas in which he would attempt to elicit testimony from the other witness, if called. He stated the four areas of inquiry to be, "(1) How much drinking both witnesses had done; (2) where the offense took place; and (3) and (4) testimony from the witness as to the treatment received by the decedent at the hospital * * * ". Magistrate Doyle properly labeled the four areas as areas of "speculation" which would not lay the basis for impeachment of the witness' testimony as presented, and rightly rejected the proffer. (Tr. 24). This Court concurs with Magistrate Doyle that none of the four areas of testimony would have so negated probable cause so as to establish the defendant's right to be free of detention.

█ Having examined the function the preliminary hearing is to serve, and the conduct of the hearing in the instant case, analysis of defendant's assertion that he was denied the procedural rights provided by Rule 5(c) becomes an easy

task. In accordance with the requirements of Rule 5(c), the defendant was allowed the right to fully cross-examine the witnesses against him within the scope of the direct examination and was given the right to introduce evidence in his own behalf. That the defendant was not allowed to conduct a discovery proceeding through a fallacious interpretation of the provisions of Rule 5(c) and the Federal Magistrates Act, does not derogate from the propriety of the hearing procedure or the scope of the cross-examination. What the defendant would have us believe to be an attempt to introduce witnesses in his own behalf, was, in fact, an attempt to have the Government produce more witnesses than they felt necessary to establish probable cause. The defendant had every opportunity to call other witnesses had he desired to do so; surely, he knew the facts and circumstances attending the incident in question. Nor was the defendant prevented in any manner from exercising his right to subpoena witnesses; rather, he made absolutely no attempt to call any witnesses of his own in an effort to contest the issue of probable cause. What the defendant did attempt was a distortion of Rule 5(c) and the Federal Magistrates Act so as to give the defendant the right to compel the Government to call witnesses which it did not feel were necessary to establish probable cause.

■ The Government's burden at the preliminary hearing begins and ends with the obligation of producing as much testimony as believed needed to establish probable cause for holding the accused for possible action of the Grand Jury. The Government does not have to call all its witnesses in order that the defendant may use them to buttress his defense. As so appropriately stated by Magistrate Doyle, if the total evidence produced by the Government is not sufficient, the case will be thrown out as having been insufficient to establish probable cause.

■ In every sense, the preliminary hearing held in this case was fair, sufficient, and complete, and the defendant was afforded every opportunity to exercise his rights as guaranteed by law. Moreover, Magistrate Doyle had sufficient evidence, rightly obtained and proffered on which to base his finding of probable cause, a finding in which this Court concurs. As stated by Circuit Judges McGowan and Leventhal in Ross v. Sirica, *supra*, 380 F.2d 565, n. 4:

"We do not intend to imply that if the judicial officer is satisfied from the account of an eye-witness that probable cause exists he is nevertheless obligated to hear other witnesses, or provide the accused with an opportunity to examine them. This would provide a discovery that is not merely incidental to the establishment of probable cause."

From the foregoing discussion, this Court believes that the Federal Magistrates Act of 1968 is a Congressional mandate that the preliminary hearing be used solely as a procedure for determining probable cause and not as a forum for discovery of the government's case.

It is the opinion of this Court that the defendant, Michael Henry Hinkle, was afforded a fair and complete preliminary hearing on the issue of probable cause and that there was no error in the proceedings.

It is, therefore, this 10th day of December, 1969,

Ordered that leave to appeal the denial of defendant's motion to re-open the preliminary hearing is denied.